ADAM FLETCHER *et al.*

*v.*

JOHN WALL.

*Opinion filed April 21, 1898.*

1. ELECTIONS—*ballot must be prepared by voter uninfluenced by outsiders.* Under the Election law of 1891 the ballot furnished by the judges to the voter must be prepared by him individually after he enters the booth, (except in case of an illiterate voter,) and he must do so uninfluenced by being furnished with tickets or pasters.

2. SAME—*voter may write name of candidate of his choice on ballot.* A voter may cast his vote for the candidate of his choice though the name of such candidate is not printed on the official ballot, but in

such case the name must be written in a blank space on the ballot and a cross marked opposite thereto.

3. SAME—*use of printed pasters to insert names of candidates is unlawful.* Inserting the names of candidates not printed on the official ballot by attaching to the ballot tickets or slips of paper on which such names are printed is unlawful, and is not authorized by section 23 of the Election law of 1891, (Laws of 1891, p. 116,) relating to writing in the names of candidates not on the official ballot.

APPEAL from the Circuit Court of Bureau county; the Hon. GEORGE W. STIPP, Judge, presiding.

OWEN G. LOVEJOY, and ALFRED R. GREENWOOD, for appellants.

WILLIAM HAWTHORNE, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding by appellee to contest the election of appellant Fletcher to the office of president and appellant Weissenberger to the office of clerk of the village of Ladd, in Bureau county. The petition avers that at an election of officers in said village on April 20, 1897,. John Rolando received more than 200 legal votes for president and John Gillen more than 190 legal votes for village clerk; that said Fletcher and Weissenberger each received no more than 140 legal votes, respectively, for said offices, but the judges of election refused to count over 190 votes cast for Rolando and Gillen, and declared that Fletcher and Weissenberger had received the highest number of legal votes cast for president and clerk, and thereafter the president and certain of the trustees of the village declared the latter elected to said offices. It thus appears that the only ground of contest set forth in the petition is, that votes legally cast for Rolando and Gillen were not counted by the judges and clerks of the election.

It appears from the record that a certificate of nomination had been filed with the village clerk on which the names of Rolando and Gillen appeared for said offices, but objections thereto being filed and sustained, no fur-

ther steps were taken to have their names as such candidates placed upon the official ballot. The ballot as prepared by the village clerk and furnished to the judges of election was as follows:

◯ Petition.          ◯ Petition.

☐ For Village President,
   ADAM FLETCHER.

☐ For Village Clerk,
   A. H. WEISSENBERGER.

☐ For Village Trustees,
   MICHAEL CONWAY.

☐ J. P. BUTLER.

☐ ANTON BRASSA.          ☐ For Village Trustee,
                            JAMES McQUAID.

Upon the canvass of the votes there were found in the box a large number of ballots on which were pasted the following ticket:

☒ For Village President,
   JOHN ROLANDO.

☒ For Village Clerk,
   JOHN GILLEN.

☒ For Village Trustees,
   JOHN RIVA.

☒ JOHN WHELAN.

☒ J. V. JONES.

☒ For Trustee to fill Vacancy,
   ED. A. CARR.

These tickets were pasted on the official ballots, most of them being attached on the margin, to the right of the blank space in the right-hand ticket. Some were put on "up-side down." One was on the left margin of the

ballot, and another was pasted lengthwise in the blank space on the right. All these ballots were rejected by the judges and clerks of the election in the canvass of the vote. The tickets so attached were printed as above, except the crosses in the squares opposite the names of the candidates. The back of each paster was gummed, so it could be attached by simply wetting it.

The testimony is to the effect that Rolando, Gillen and Riva, three of the candidates named in this ticket, were during the election in the vicinity of the polls, each having in his possession numbers of the tickets which were furnished to voters, some of them being already marked with a cross in the squares opposite the names. One witness testified: "I saw John Rolando, candidate for village president, have these ballots there that day. I jokingly says, 'I wish I had a paster so I could vote,' and he says, 'I will give you one,' and he pulled out a hand full, some of them marked and some of them weren't marked. That was twelve or fifteen feet from the voting place." Another said: "I was in Ladd on April 20, 1897, —the time of the village election. I saw some paster tickets there that day, about twenty or thirty feet from the polls. John Gillen had them. He was running for clerk on the paster ticket. He showed the pasters to some other people and gave the pasters to them. It was a paster marked just the same as Exhibit 5." "Exhibit 5" showed the paster ticket marked with a cross in the square opposite the names of the candidates. The testimony of these witnesses is fully corroborated by that of others, and wholly uncontradicted.

The only question in the case is, were the tickets so prepared and voted, legal ballots? If they were not, appellants were legally elected and the circuit court erred in its finding and decree to the contrary.

The method of conducting the election on the part of Rolando and Gillen in the use of these pasters and the manner in which they were furnished to voters were, in our

opinion, violative of the spirit and intent of the Election
law of this State in force since July 1, 1891. The several
sections of that law provide ample opportunity for all
persons to have their names placed upon the official ballot
as candidates, and clearly contemplate that candidates
shall avail themselves of that opportunity. Section 14
provides: "The names of all candidates to be voted for
in each election district or precinct shall be printed on
one ballot, * * * and the ballot shall contain no other
names, except that in case of electors for President and
Vice-President of the United States the names of the can-
didates for President and Vice-President may be added
to the party or political designation." It is true that, in
order that no voter shall be deprived of the right to cast
his ballot for whomsoever he will for any office, he is
authorized by section 23, when the name is not printed
thereon, to prepare his ballot by writing the name of the
candidate of his choice in a blank space on said ticket,
making an X opposite thereto. It is, however, plainly
prescribed by the statute that the ballot furnished by
the judges to the voter must be prepared by him individ-
ually, after he enters the booth, except in so far as he
may be assisted as an illiterate voter, under the provi-
sions of section 24, and that he shall be allowed to do
so uninfluenced or in any way controlled by being elec-
tioneered or furnished with tickets or pasters by out-
siders. Section 21 requires the officers upon whom is
imposed by law the duty of designing or providing poll-
ing places, to furnish a sufficient number of booths,
"which shall be provided with such supplies and conven-
iences, including shelves, pens, pen-holders, ink, blot-
ters and pencils, as will enable the voter to prepare his
ballot for voting, and in which voters may prepare their
ballots screened from all observation as to the manner
in which they do so. * * * The arrangement shall be
such that the voting booths can only be reached by pass-
ing within said guard rail. They shall be within plain

view of the election officers, and both they and the ballot boxes shall be within plain view of those outside of the guard rail. * * * No person other than the election officers and the challengers allowed by law, and those admitted for the purpose of voting as hereinafter provided, shall be permitted within the guard rail, except by authority of the election officers, to keep order and enforce the law. The number of such voting booths shall not be less than one to every seventy-five voters, or fraction thereof, who voted at the last preceding election in the district." The following section provides that the voter, upon entering the place of voting, shall give his name, and, if required to do so, his residence, to the judges of election, one of whom shall thereupon announce the same, etc., and provide him with the official ballot. Section 23, which prescribes the manner of voting, is in part as follows: "On receipt of his ballot the voter shall forthwith, and without leaving the inclosed space, retire alone to one of the voting booths so provided, and shall prepare his ballot by making in the appropriate margin or place a cross (X) opposite the name of the candidate of his choice for each office to be filled, *or by writing in the name of the candidate of his choice in a blank space on said ticket, making a cross (X) opposite thereto.*" The next section authorizes two of the election officers, of different political parties, to be selected from the judges and clerks of the precinct in which they are to act, to assist any voter who may declare, upon oath, that he can not read the English language, or that by reason of any physical disability he is unable to mark his ballot and requests such assistance. Section 28 prohibits every person from doing "any electioneering or soliciting of votes on election day within any polling place or within one hundred feet of any polling place," and provides that no "person shall interrupt, hinder or oppose any voter while approaching the polling place for the purpose of voting." Section 29, also, provides that "any voter who shall, ex-

·cept as herein otherwise provided, allow his ballot to be seen by any person with an apparent intention of letting it be known how he is about to vote, or who shall make a false statement as to his inability to mark his ballot, or any person who shall interfere or attempt to interfere with any voter when inside said inclosed space or when marking his ballot, or who shall endeavor to induce any voter, before voting, to show how he marks or has marked his ballot, shall be punished by a fine," etc.

These several sections clearly show that it was the intention of the legislature, by the passage of the Ballot law, to carry out the purpose of the act as indicated in its title,—that the voting shall be by ballots printed and distributed at public expense, for candidates nominated for public offices, to regulate the manner of holding elections and to enforce the secrecy of the ballot. The well known object of the law was to prevent the pernicious practices, theretofore existing, of peddling tickets at the polls, electioneering voters, and by corrupt and fraudulent methods interfering with the free and unrestrained exercise of the right of the voter. It seems too clear for argument that if the practice resorted to in the use of pasters, as was here done, is to be legalized, the whole purpose and object of the law will be practically abrogated. There would, in that case, be no substantial difference between the operation of the present law and the old method. Under that law, candidates, and those acting in their behalf, provided themselves with tickets often marked as they desired them to be voted, furnished them to voters, and by persuasion, purchase or otherwise, induced the voters to deposit such ballots in the ballot-box. Under the method here adopted they could furnish the ticket as they desired it to be voted, marked, or with instructions to the voter how to mark it, and by the same methods induce him to attach it, as furnished, to the official ballot, and then procure it to be deposited in the ballot-box. The manner of voting prescribed by

the act is thereby wholly changed and the secrecy of the ballot entirely destroyed.

It seems to be thought, however, that to deprive a candidate of the right to have such ballots counted in his favor would be to interfere with the privilege of the voter to cast his ballot for the candidate of his choice. We do not think so. Under the provisions of section 23, authorizing the voter to write the name of the candidate of his choice upon the ballot, as construed in *Sanner* v. *Patton*, 155 Ill. 553, every voter is guaranteed the right to vote for any person for an office, whether the name of such person is printed upon the official ballot or not. The number of booths required to be furnished and the facilities provided therein,—"shelves, pens, pen-holders, ink, blotters and pencils,"—to enable the voter to prepare his ballot, together with the assistance which he is entitled to receive from the judges, amply secure to him every right of a voter. The mere fact the methods thus provided may be less convenient than the use of pasters or stickers furnishes no sufficient reason for changing or modifying the requirement of the law, wisely designed for the purposes above mentioned. The inconvenience here would have been no greater than in any other case where the voter writes the name of a candidate on the ballot. All that was necessary if a voter desired to vote for Rolando for president was to write his name under that of Fletcher, making a cross opposite it.

It seems to be thought that because, under the provisions of section 23, the voter may prepare his ballot by writing the name of the candidate of his choice in a blank space on the said ticket, he may also indicate his choice by printing such name on the ticket or by pasting the printed name in the space on the ticket, and in support of the position reference is made to that provision of the statute (3 Starr & Curtis, chap. 131, sec. 1, clause 15,) in regard to the construction of statutes which says, "the words *'written'* and *'in writing'* may include

172—28

printing and any other mode of representing words and letters." This statute has no proper application to the construction of the language of section 23. There is no reference to a "written" instrument or matter "in writing" in this section, but it expressly says that the voter "shall prepare his ballot by  *  *  *  *writing* in the name of the candidate of his choice," and the preceding section 21, by requiring the officers to provide pens, pen-holders, ink, blotters and pencils, and no other means or conveniences for preparing the ballot, clearly indicates that the name of the candidate shall be inserted by writing,—that is, it commands the act of the voter to be performed in a certain manner. Of course, the form of the letters is a matter of no consequence. Nor are we disposed to hold that a ballot should be rejected merely because the name appears in print, provided it is prepared by the voter himself in that way after entering the booth; but we do hold that it is not lawful for him to use stickers or pasters in so doing. We do not attach so much importance in this case to the fact that the statute was violated by candidates distributing the tickets and electioneering, as we do to the fact that by the use of such tickets every facility is furnished for evading and violating the provisions of the law.

In Pennsylvania, the act providing that the voter may cast his ballot for persons whose names do not appear on the ballot by "inserting" the name, etc., it has been held the ballot might be prepared by using a sticker instead of writing the name, the court saying, in substance, that the word "writing" was not used in the statute, and using a sticker was a method of "inserting" the name. The language of the New York statute under consideration in *People ex rel.* v. *Shaw,* 133 N. Y. 493, relied upon by appellee here, is, "the voter may write *or paste* upon his ballot the name of any person for whom he desires to vote for any office." Both these statutes materially differ from ours, hence the decisions of those States are not in point here.

Our conclusion is that the ballots to which the paster tickets were attached were properly rejected in the count by the board of canvassers and that appellants were properly declared elected.   The judgment of the circuit court will therefore be reversed and the cause remanded to that court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded.*