# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## Hall v. Sumner.

(Decided February 24, 1922.)

### Appeal from Perry Circuit Court.

Elections—Writing Name of Person to be Voted for on Ballot.—The provision of section 1471, Kentucky Statutes, which requires an elector, who desires to vote for a person, to fill an office, whose name is not printed upon the ballots, to write the name of the person upon the ballot, is mandatory, and the elector himself, must write the name, unless he is an illiterate, blind or physically disabled, when the clerk of election may write the name, after the elector has deposed under oath, to such condition.

S. M. WARD and JOHN E. CAMPBELL for appellant.

WOOTON, SMITH & WOOTON, BAILEY P. WOOTON and DENNY P. SMITH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

The appellant, Hall, was the nominee of the Republican party for Justice of the Peace in magisterial district No. 6, of Perry county, and as such his name was printed upon the ballots used at the regular November election, 1921, under the device of that party. The appellee, Sumner, was not a candidate of any party, and his name was not printed upon the official ballots. In the

magisterial district there were two voting precincts, known as Leatherwood No. 7 and Leatherwood No. 28. Hall received eighty-six votes at the two precincts, and there seems to be no question made as to their legality or number. The officers of the election at the precincts returned that Sumner had received thirty votes in Leatherwood precinct No. 7 and eighty-one votes in Leatherwood Precinct No. 28, making one hundred and eleven votes received by him in all, and thus giving him a majority of twenty-five votes in the district, and the election commissioners awarded to him the certificate of election. Hall in due time instituted this action for the purpose of contesting the election of Sumner. The ground upon which he contested the election of Sumner was that the latter had not received any legal votes, and that none should have been counted for him, in that all the votes which had been counted as having been cast and certified for Sumner were attempted to be cast for him in the following way, viz.: The clerks of the election without being requested so to do by the voters, and without the voters having made any declaration under oath that they were illiterate or blind or physically unable to vote, wrote the name of Sumner upon each ballot with pen and ink in the space designated for candidates for justices of the peace (there being no condidate of the Democratic party for the office), in the column under the device of the Democratic party, before delivering the ballot to the voter, and in no instance did any voter go into the booth and himself write the name of Sumner and then vote for him by making a cross (x) mark with a stencil in the square opposite the name, and for such reason the appellant and contestant below contends that all such attempted votes were illegal and not cast in conformity to law, and therefore should not have been counted, and that when such were eliminated he had received a clear majority of the votes.

Sumner by answer traversed the averments of the petition.

Two of the officers of the election, at Leatherwood No. 7, and the clerk of the election at Leatherwood No. 28, gave their depositions and by agreement of the parties, the ballot boxes, at the two precincts were opened and the ballots considered as evidence. The circuit court determined that Sumner was elected and dismissed the action against him. Without reciting the evidence, it established, that at Leatherwood, No. 28, polling place,

where there were counted and certified 80 legal votes, for Sumner, the name of Sumner was written upon 79 of the 80 ballots, counted for him, by the clerk of the election, and the ballot was then given to the voter, who went into the booth and with the stencil placed a (x) mark, in the square opposite the name. Only on one ballot out of the 80, did the voter himself write the name of Sumner and place the stencil mark, in the square opposite the name. On the 79 ballots, the name of Sumner is written in ink and in the same handwriting, and the clerk deposes, that he placed the name upon each of the ballots, and while he deposed, that quite a number of the voters requested him to place Sumner's name upon the ballots, no one of them was sworn or deposed under oath, that he was unable to read and write the English language, or was blind, or physically unable to do the things required by the statute, in voting for one, whose name was not upon the ballot. His evidence upon this subject is undisputed. If the votes counted for Sumner because of the 79 ballots, at this precinct, whereon the name of Sumner was written by the clerk, should be eliminated, he was defeated for the office, as it is not contended, that he received more than thirty votes, at the Leatherwood No. 7, voting place, and it will not be necessary to consider the votes at the latter precinct. Hence, the question for determination is: where the name of the candidate, either without or by the request of the voter, but, who does not depose under oath that he is illiterate, blind or physically disabled, is written on the ballot by the clerk of the election and the voter then takes the ballot into the booth and stamps a (x) mark, in the square opposite the name, with the stencil, provided by law, is the law complied with, and the vote a legal one, which should be permitted to be counted? It will be observed, that these facts differentiate this question from the one decided in Edwards v. Loy, 113 Ky. 748. In the latter case, the name of Loy was written under a party device, by the clerk of the election, before delivering the ballot to the elector, and the voters did not stamp the (x) mark, in the square opposite his name, and it was proposed to count, as cast for Loy, the votes of such persons, as stamped the (x) mark, in the circle around the party device, under which the name was written, and it was held, that as the clerk had no authority to write the name on the ballot, and the voter did not vote for him, by stamping the (x) mark in the square opposite

the name, there were no votes cast for him.. The same distinction exists between the facts, in the instant case, and that of Parrish v. Powers, 127 Ky. 169, where the name of the candidate was not upon the ballot, and he procured "pasters," with his name thereon and caused one of them to be pasted, in the blank space, under the designation for a certain office, in the column, under a party device, and it was proposed to count as cast for him, the votes of all electors, who stamped a cross mark, in the circle, around the party device, at the head of the column, but, it was held that such persons did not vote for him, upon the principle, that the name was illegally upon the ballot, and the voter had no intention of voting for him. In King v. McMahan, 179 Ky. 536, the name of the candidate was printed upon the ballots, under a party device, contrary to law, and it was held that the voters, who voted by stamping the (x) mark, in the circle under the device of that party, did not vote for such candidate, because it was immaterial whether the name was illegally written or illegally printed under a party device. The effect of the foregoing decisions is that if the name of one is unlawfully written or printed or pasted upon the ballots, he can receive no valid votes.

In the instant case the name was by an unauthorized person written in a column, under a party emblem, but in the blank space left upon the ballot for the name of a candidate whose name was not printed upon the ballots, and the voters stamped a cross (x) mark in the square opposite the name with the stencil, and no ballot was counted as having been cast for Sumner, except those marked with the stencil opposite his name. It will be observed, however, that in each of the opinions cited, it was held that the only way to cast a valid vote for a person whose name is not printed upon the ballots is for the elector himself, if capable, to write in the name of the person at the proper place and stencil the cross (x) mark in the square opposite the written name. The statute which governs the method of voting for one whose name is not printed upon the ballots is the latter portion of section 1471, Kentucky Statutes, and is as follows:

"Nothing in this law contained shall be so construed as to prevent a voter from voting for any qualified person cther than those whose names are printed on the ballots for any office to be filled, by writing with black lead pen-

cil under the designation of the office, the name of such person and placing to the right of such name a (x) mark. All marking upon the ballot shall be made with black ink stencil. There shall be kept in each booth the necessary stencils and pencils to be securely fastened by a string or cord of sufficient length to enable the voters to use same."

The right of suffrage is not a natural but a political right and hence it is in the power of the state to prescribe how it shall be exercised, and in its exercise the elector may be required to conform to reasonable rules and regulations, which do not take away the right or make its exercise so difficult as to amount to exclusion of the right, and if an elector fails to indicate his choice in the manner prescribed by law, his efforts are a nullity. Section 1471, *supra,* has been upon the statute books for a third of a century, and its provisions have been considered by this court many times, and the people have never, through legislative action, sought its repeal, which seems to be ample warrant for holding that its provisions are not unreasonable, or a restriction upon the right of suffrage. It prescribes a specific method by which a vote may be cast for a person whose name is not printed upon the ballots, and one of the requirements is that the elector himself shall write the name of the person upon the ballot. If this is a mandatory requirement, a vote attempted to be cast for such a candidate by any other method is void. A rule of construction applied to such statute is, that when a statute gives power to do a thing in a particular way "affirmative words, marking out the way by necessary implication, prohibit all other ways." Directors of Little Beaver Township, 165 Pa. St. 233; Fletcher v. Wall, 172 Ill. 426; Waggoner v. Russell, 15 L. R. A. 740; Chappell v. Colson, 189 Ky. 102. In the last mentioned case it has been recently held that a voter can not cast a valid vote for one whose name is not on the ballot, by placing upon the ballot, in the space where the name should be written, a paster containing the person's name, and then indicating the choice by a cross (x) mark in the square opposite the name printed upon the paster. This was held upon the ground that a specific direction as to how such a vote should be cast precludes the right to do it in any other way. It is true that many of the minute details of a statute, relating to elections have been held, where even the performance of which are imposed upon the elector, to be directory. Such holding permits the

making of the cross (x) mark in the proper circle or square with a pencil instead of a stencil, when voting for one whose name is printed upon the ballots, provided it appears that such manner of marking the ballot was not intended by the voter to furnish a means of identification of the ballot by which it could be known thereafter who cast it. Houston v. Steele, 98 Ky. 596; Graham v. Graham, 24 R. 548. Such provisions of statutes relating to elections which impose duties upon the elector himself have never been held to be directory, where the purpose of the provision was to insure secrecy of the ballot and to exclude knowledge from others of the persons or measures for which the elector voted. An examination of our statutes relating to elections makes the purpose of the legislature to insure secrecy of the ballot and to throw around the method of voting, such requirements as tend to that accomplishment, to be the chief aims of such legislation, and every provision of the statutes which has such for its purpose, is mandatory. Felts v. Edwards, 181 Ky. 287. The requirement that the elector, when he desires to vote for one whose name is not printed upon the ballots to himself write the name on the ballot, has for its purpose the tendency to the concealment of the elector's choice, and a provision requiring secrecy of the ballot is mandatory, whether desired by the elector or not.

Section 1471, *supra,* provides "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice," but a provision like this means a choice which the elector has endeavored to express in the way provided by law, 9 R. C. L. 1131, as one could make his choice plain by writing upon the ballot the name of the person voted for, and subscribing the statement with the voter's name, but no one would insist that such a ballot would be valid. The latter provision of section 1471 should be construed with section 1592, of the same chapter, which provides: "This chapter shall be liberally construed so as to prevent any evasion of its prohibitions and penalties by shift or device."

Section 1475, Kentucky Statutes, prohibits assistance to another in marking his ballot, unless he make oath that he cannot read the English language, or is blind, or so disabled physically that he cannot perform the physical effort of marking his ballot. If the elector is illiterate, the clerk marks a dot with a pencil where the voter should mark with the stencil to express his choice, and

then the voter must retire into the booth and mark the ballot. Only in the case of blind or physically disabled persons can the clerk mark the ballot as directed by the voter, and in the polls. The requirement that the voter must first depose upon oath that he is an illiterate, blind or physically disabled person, before the officers of the election are permitted to render him assistance in voting, has been held to be mandatory, and the votes of such persons are void when assistance has been rendered them without their making such affirmation upon oath. Major v. Barker, 99 Ky. 305; Anderson v. Lykens, 104 Ky. 699; Banks v. Sargent, 104 Ky. 643; Commonwealth v. Kaufman, 126 Ky. 624; Allen v. Griffith, 160 Ky. 528. It would be remarkable that a statute which prohibits the assisting of an illiterate, blind or disabled person in the preparation of his ballot, until he deposes to the fact of his condition upon oath, should to be held to be mandatory, while a statute which providing in specific terms that the voter desiring to vote for a person whose name is not upon the ballot, should himself write in his name, was only directory. The fact that the statute singles out illiterates, blind and disabled persons as the only classes to whom under conditions, help, in the preparation of their ballots, may be extended, excludes mandatorily giving assistance to any others in the preparation of a ballot. The statute requires the officers of the election to provide in the booths pencils for persons to write in the names of candidates not printed on the ballots, indicating clearly that that was the method which the legislature intended to be effective. If a voter should write the name of the person he desired to vote for with another colored pencil, or with ink, the vote would not be void on that account, if it appeared that the voter was in good faith and did not intend by the use of the different colored pencil or ink to place upon the ballot a distinguishing mark by means of which it might be identified, as the use of such pencil or ink would be an attempt to express a choice in the way provided by law. It is insisted that section 1471, *supra,* so far as it prescribes the method of voting for one whose name is not upon the ballot is directory, because it makes no provision for the voting of illiterate, blind or physically disabled persons, but it will be observed that this section does not make provision for such persons to vote by any method, although it prescribes all the methods of valid voting, but section 1475, *supra,* provides for the il-

literate, blind and physically disabled, and is broad enough in its terms to embrace the necessary assistance to such persons to prepare their ballots, when desiring to vote for persons whose names are not printed upon the ballots. Having arrived at the conclusion that the 79 ballots counted as having been cast for Sumner at Leatherwood, No. 28, polling place, were not valid expressions of the choice of the voters, in the way prescribed by a mandatory requirement of the statute, they should not have been counted, and the certificate of election should have been granted to the appellant Hall.

The judgment is therefore reversed and remanded with directions to set aside the judgment, and to adjudge that appellant was elected and entitled to qualify as such.