## Lewis, et al. v. Petrey, et al.

(Decided December 3, 1926.)

## Appeal from Harlan Circuit Court.

1. Judges—That Judge Tried Case in which County Clerk was En-- joined from Printing Contestees' Names on Ballots Held Not to Disqualify Him to Preside at Election Contest.—That judge pre- siding in trial of election contest tried case in which county clerk was enjoined from printing contestees' names on ballots held not sufficient to disqualify him.

2. Judges—Affidavit that Nephew of Judge Trying Contest of Town Trustees' Election was Interested in Litigation Pending Against. Town Held Not to Show Judge's Disqualification.—Affidavit that. nephew of judge trying contest of town trustees' election was inter-- ested in litigation pending against town, and regarded personnel of board of trustees as highly important, without stating facts showing that contestants proposed to control litigation in his. favor, or that judge might not act impartially, held insufficient to require judge to vacate bench.

3. Elections—Evidence Held to Show that Election Officers Unlaw- fully Wrote Contestees' Names on Enough Ballots to Elect Them (Ky. Stats., Sections 1471, 1475).—Evidence held to show that. election officers, in violation of Ky. Stats., sections 1471, 1475, wrote contestee's names on sufficient number of ballots, voted in booth, and voted openly by voters swearing they could not read, to elect contestees.

LEE & SNYDER for appellants.

J. S. FORESTER and E. H. JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellees, J. W. Petrey, John Williams, Willie Slagle, W. H. Gibson and John C. Clem, were candidates at the November election, 1925, for the offices of trustees of the town of Evarts, a town of the sixth class, on what was known as the Petrey ticket. The appellants, Gil Lewis, W. H. Fritts, W. L. Capps, John B. Kelly and R. H. Byrd, were candidates for the same offices on what was known as the Gil Lewis ticket. The names of the ap- pellees were printed on the ballots used at the election but those of the appellants were not. The appellants had been candidates for some time before the election, but a few days prior thereto the county clerk was enjoined from printing their names on the ballots. Their sup- porters then held a meeting and agreed to write their

names in the blank spaces provided for that purpose on the ballots. The officers of the election certified that the appellants had each received the following number of votes: Gil Lewis 293; W. H. Fritts 284; W. L. Capps 279; John B. Kelly 287, and R. H. Byrd 285, and that the appellees had each received the following number of votes: J. W. Petrey 142; John Williams 140; Willie Slagle 152; W. H. Gibson, 143, and John C. Clem 140, and the election commissioners awarded certificates of election to the appellants.

The appellees in due time filed this contest and in their petition alleged that the officers of the election in the two precincts in Evarts wrote in the names of the appellants on 291 ballots and delivered them to the voters without any of the voters being sworn as to their ability to read the English language or as to their being blind or physically unable to mark their ballots. The names of the voters who voted these ballots were set out in the petition. The petition also named 29 of these voters who voted openly in the presence of the officers for appellants or whose ballots were stenciled by the officers without the voters being sworn as to being blind or physically unable to mark their ballots, and also named 24 voters who voted for appellants who were not legal voters, being nonresidents of the town of Evarts.

Appellants filed an answer denying the averments of the petition and a counterclaim in which they named 9 voters who voted openly for appellees without being sworn and 33 voters who were not legal residents of the precincts in which they voted and 15 voters who voted in the booth with others and 3 voters who exposed their ballots, all of whom voted for appellees.

There are two precincts in the town of Evarts known as No. 8 and No. 9.

Proof was taken and the case submitted and the circuit judge found that in precinct No. 8 the officers of the election wrote on the ballots the names of the appellants as follows: By Floyd Middleton, clerk of the election, 2 ballots; by A. L. Turner, judge, 106 ballots, and by C. C. Ball, judge, 64 ballots, making a total of 172 ballots on which the names of appellants were written by the election officers in this precinct. He further found that all voters for whom such ballots were prepared and who swore that they could not read or write were permitted to vote such ballots openly before the election officers; and that the voters who were not sworn at all about being

able to read or write were given ballots on which the names of appellants had been written by one of the officers and these ballots were taken by the voters and voted in the booth. He found that all of these ballots were illegally voted and deducted 172 votes from the number certified for appellants. He further found that in precinct No. 9 the names of appellants were written on 45 ballots by G. W. Lankford, the clerk, and that of this number 12 of the voters were sworn relative to being able to read or write and the remaining 33 ballots were illegally prepared and voted, and he deducted that number from the vote certified and counted for appellants, which left their legal vote as follows: Gil Lewis 88; W. H. Fritts 79; W. L. Capps 74; John B. Kelly 82, and R. H. Byrd 80. He also found that in precinct No. 8 seven votes were cast openly for appellees and that in precinct No. 9 eight votes were cast for appellees by nonresidents, and he deducted these 15 votes from the total number certified for appellees, which left their vote as follows: J. W. Petrey 127; John Williams 125; Will Slagle 137; W. H. Gibson 128, and John C. Clem 125. He adjudged that the certificates of election issued by the county board of election commissioners to the appellants be canceled and that each of the appellees was duly elected to the office of trustee of the town of Evarts.

Before considering the evidence it becomes necessary to dispose of a preliminary question, and that is whether the court erred in refusing to sustain a motion that the presiding judge should vacate the bench. The affidavit filed by appellants in support of their motion to vacate is entirely too long to be incorporated herein, but in substance it states that Hon. J. G. Forester, judge of the Harlan circuit court, had heard and tried the case in which the county clerk had been enjoined from printing appellants' names on the official ballots; that he was prejudiced against the contestees in this case and could not and would not give them a fair and impartial trial; and further, that E. S. Forester, nephew of Hon. J. G. Forester, with one Owen Kelly, was involved in litigation with the town of Evarts in which Kelly and E. S. Forester were seeking to recover approximately $40,000.00 for work done by them as contractors. The nature of the work done is not stated. The affidavit further stated that E. S. Forester was vitally interested in this litigation and that the question of who should constitute the

members of the board of trustees of Evarts was regarded as highly important by him.

In construing section 968 of Kentucky Statutes, which provides the manner in which the presiding judge may be required to vacate the bench, this court has held in a great number of cases that an affidavit to be sufficient under this section of the statutes must go further than the general language of the statute and must set forth facts which must not be the mere conclusions of the affiant but must be such as, to necessarily show bias or prejudice against affiant by the judge and sufficient to prevent him from fairly and impartially trying the case. Stamp v. Commonwealth, 195 Ky. 404, 243 S. W. 27. The fact that the presiding judge had tried the case in which the county clerk had been enjoined from printing appellants' names on the ballots was not sufficient to disqualify him from presiding at the trial of this case. In Chreste v. Commonwealth, 178 Ky. 311, 198 S. W. 929, the court held that the mere fact that the judge had made some adverse ruling affecting the affiant and entertained a conviction regarding the principle of law involved in his case, furnished no cause for his vacating the bench on the affiant's trial. In German Insurance Co. v. Landram, 88 Ky. 433, 11 S. W. 367, 10 R. 1039, the court said:

"The judge may have instructed the jury in a case similar to the one the affiant is about to try unfavorably to his side of the controversy. He may, have sustained a demurrer to a pleading in the case, or in some other similar case that, if adhered to, must prove fatal to the case of the affiant. He may be known to one of the parties and unknown to the other. He may have peculiar views on certain branches of the law. He may refuse to continue a case when the litigant or his counsel believes the grounds were sufficient. In all such cases the litigant, for such reasons, may conceive that injustice will be done him, and, therefore, he is ready to make the affidavit, when it is apparent that not one of the grounds mentioned, or those of a like character, are sufficient to require the judge to vacate the bench."

Had E. S. Forester, the nephew of the judge, been a party to the litigation the motion to require the judge to vacate the bench would necessarily have been sustained. Petrey

v. Holliday, 178 Ky. 410, 199 S. W. 67. ' But this affidavit only stated that E. S. Forester was interested in litigation pending against the town of Evarts and that the question of who should constitute the members of the board of trustees was regarded as highly important by him. The affidavit did not state facts showing that the appellees, if elected, proposed to control the litigation in favor of E. S. Forester or that they did not propose to see that the interests of the town were protected. No facts are stated as to E. S. Forester's interest in this case that would indicate the presiding judge might not act impartially. We do not think that the affidavit set forth such facts as would disqualify the judge, and it follows that he did not err in overruling the motion to vacate the bench.

W. F. Middleton, who was challenger and inspector in precinct No. 8, testified that he was in the voting place from 6 a. m. to 4 p. m. with the exception of a few minutes; that the officers of election wrote the names of appellants on a large number of ballots before handing the ballots to the voters. He identified 120 ballots on which the names of apppellants had been written by A. L. Turner, one of the judges, and 69 ballots on which their names had been written by C. C. Ball, the other judge. He also testified that all voters who made an oath that they could not read were permitted to vote openly in the presence of the officers or their ballots were stenciled by the officers in their presence; and those voters who were not sworn as to their ability to read took the ballots to the booth and voted them after appellants' names had been written thereon by one of the officers. He only saw two voters who were physically disabled or unable to vote without assistance. He made a record at the time of all voters for whom the election officers wrote the names of appellants on the ballots and he gave the names of 162 such voters.

Floyd Middleton, who was clerk in precinct No. 8, testified that there were about 20 voters who made oath that they could not read and that all of them voted openly. He identified 47 ballots on which the names of appellants were written by Ball in addition to the 16 ballots admitted by Ball to have been written by him. He further testified that Cleve Carmichael, who was a challenger, would ask the voters when they came in if they wanted the names of appellants written on their ballots.

A. L. Turner, one of the judges in precinct No. 8, identified 21 ballots on which the names of appellants had been written by him, and testified that he wrote the names of appellants on 35 to 50 ballots in all, and that practically all the voters for whom these names were written on their ballots made oath that they could not read.

C. C. Ball, the other judge in precinct No. 8, identified 16 ballots on which the names of appellants were written by him and testified that he wrote the names of appellants on 30 or 35 ballots in all and that each voter for whom he prepared a ballot made oath that he couldn't read.

Ance Bowlin, who was challenger in precinct No. 9, made a list on the day of the election of 15 names of voters for whom G. W. Lankford, clerk, wrote the names of appellants on the ballots. He identified 61 ballots on which the names of appellants had been written by Lankford; he testified that none of the voters for whom these ballots were prepared were sworn as to whether they could read. G. W. Lankford, clerk in precinct No. 9, identified 12 ballots on which the names of appellants had been written by him. He testified that he thought the voters were sworn.

F. M. Jones, circuit clerk, was introduced as a handwriting expert and identified 64 ballots on which the names of appellants had been written by C. C. Ball; 106 ballots on which their names had been written by A. L. Turner and 46 ballots on which their names had been written by G. W. Lankford.

A careful reading of the evidence and an inspection of the ballots which were filed as exhibits strongly support the view that the officers of election in the two precincts wrote the names of appellants on at least the number of ballots found by the lower court in its judgment and that the election was conducted by the officers in charge on the theory that they had the right to write the names of appellants on the ballots for any voter if the voter took the ballot and voted it in the booth, and that any voter who made oath that he could not read could vote his ballot openly or have it voted for him by one of the officers.

Section 1475 of Kentucky Statutes sets forth in clear and unmistakable language the manner in which illiter-

ate, blind or physically disabled persons shall vote, and section 1471 of Kentucky Statutes provides that a voter may vote for any qualified person other than those whose names are printed on the ballots by writing with black lead pencil under the designation of the office the name of such person and placing to the right of such name a (X) mark. In Hall v. Sumner, 194 Ky. 1, 238 S. W. 197, it was held that the provision of section 1471 of Kentucky Statutes which requires a voter who desires to vote for a person whose name is not printed on the ballots to write the name of the person on the ballots is mandatory and the voter himself must write the name unless he is illiterate, blind or physically disabled. In Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69, we said:

"There are certain principles relating to elections and voting at elections which are too well established for controversy. Among these are the following, viz.:

"(1) The essential requirement of a valid election is that it shall be free and equal, and that the ballot shall be secret, and the provisions of the statutes, which are necessary to effect those ends are mandatory, but, mere irregularities of election officers and voters, which do not affect the merits of the case, and do not affect the fairness and equality of the election or the secrecy of the ballot will not vitiate the election nor affect the validity of a vote.

"(2) Where an election officer or other person goes into the booth with a voter and assists him in stenciling the ballot, the vote should be rejected whether or not the voter is an illiterate.

"(3) To mark the ballot of a voter with a pen or pencil, or to point out on the ballot where to stencil it, without the voter having been sworn to the effect that he can not read, or is blind or physically disabled, the ballot should be rejected, although the voter may then go into the booth and stencil it.

"(4) If an officer of the election or other person stencils the ballot of a voter, it should be rejected unless the voter is blind or physically disabled, and has taken an oath to that effect.

"(5) A ballot, which a voter stencils openly, as is said 'upon the table,' should be rejected, although the voter may have taken the illiterate oath.

"(6)  If a voter is blind or physically disabled, so that he cannot stencil his ballot, and having taken an oath to that effect, then his ballot may be lawfully stenciled for him, in the presence of those present."

Also see Kean v. Whittle, 210 Ky. 273, 275 S. W. 818.

The provisions of both sections 1471 and 1475 of Kentucky Statutes were clearly violated in this election, and the court did not err in declaring void the ballots on which the names of appellants had been written by the officers and taken by the voters and voted in the booth, and the ballots that were voted openly by the voters although they had declared on oath that they were unable to read. This leaves appellants with such a number of legal votes that it is unnecessary to discuss the evidence relative to ballots challenged for other reasons, as the result would not be changed by any disposition that might be made of them.

There is no evidence of any other irregularity in the election, and the officers and voters apparently acted in good faith, and the officers conducted the election in what they believed to be a legal manner. It is clear that a large majority of the legal voters of the town of Evarts desired the election of apppellants and desired to vote for them for the offices they sought, but the plain provisions of the statutes can not be ignored by this court, and the judgment must therefore be affirmed.

Judgment affirmed.