BLACKMAN et al. v. STONE et al.

No. 6592.

Circuit Court of Appeals, Seventh Circuit.

Feb. 3, 1939.

SPARKS, Circuit Judge.

This action in equity was originally instituted on October 12, 1936, by Abe Blackman and forty-three other persons on behalf of themselves and all others similarly situated. The bill alleged that the plaintiffs were citizens of the United States, of lawful age, and had been residents of the State of Illinois for more than one year immediately preceding the filing of the bill; that each was a duly qualified and registered voter of that State, and that they were desirous of having the names of certain individuals (being candidates for President of the United States, Vice-President of the United States, United States Senator, members of Congress, and State officers in the State of Illinois, all members of the Communist party) placed on the election ballot so that the plaintiffs, and others similarly situated, might vote for them at the ensuing election in November. From the bill it appeared that a petition containing over 25,000 names of qualified voters of Illinois had been filed with the Secretary of State by appellants and their associates, asking that certain officers named therein be placed on the ballot as Communist candidates for State and Federal offices. Included in this total there purported to be signatures of 200 qualified voters from each of at least 50 Illinois counties. Upon the filing of this petition an objection was filed with the Secretary of State to the certification of the Communist party candidates on the ballot. Thereupon, the Secretary of State sent a copy of the objection by registered mail to the plaintiffs, together with a notice of hearing of the same by the Board on September 25, 1936. On that date the Secretary of State, Auditor, and the Attorney General, as statutory members of the State Officers Electoral Board met together with the Communist candidates. The latter, appearing specially, objected to the State officers named acting on the Board for the reason that they were candidates for election. Thereupon, those officers declined to act as members of the Board. On the following day appellees Stone, Orr, and Jones, who were members of the Supreme Court of Illinois, and oldest in point of continuous service on that court, declared themselves to be the State Electoral Board, in accordance with the Illinois Statute,[1] and proceeded to hear the objections.

Hart E. Baker, of Chicago, Ill., for appellants.

John Kasserman, Asst. Atty. Gen., for appellees.

Before SPARKS, Circuit Judge, and LINDLEY, District Judge.

---

[1] Illinois Revised Statutes 1937, ch. 46, § 298 b(5a).

At that meeting the Communist candidates appeared specially and objected to the jurisdiction of the newly constituted Board. Thereupon, that Board ruled that it had jurisdiction to hear and determine the objections, and, upon such hearing, held that plaintiffs' petition was insufficient. The basis of the finding was that some of the signers of the petition were not qualified because they had already voted for other candidates for the same office in an earlier primary and were not qualified to sign a petition for a new party or other candidates under the Illinois Statute, Smith-Hurd Ill. Statutes, chap. 46, § 293, thereby reducing the number of petitioners to less than required by the Statute.

By way of relief, the bill sought to enjoin various named county clerks of Illinois from printing ballots for the election of November 3, 1936, without including thereon the names of the candidates designated in the bill; or if the ballots were printed, to prevent the clerks named from distributing them without including thereon, by printing or paster, the names of the Communist candidates.

They further asked a mandatory injunction against the Governor, Auditor, and Secretary of State of Illinois, directing them to certify to the county clerks of Illinois the names of the Communist candidates named in the bill.

They further asked that the action of Justices Stone, Orr, and Jones, acting as the State Electoral Board, be declared void because of lack of jurisdiction. The bill further alleged that the plaintiffs were without any plain, adequate and complete remedy at law because their rights could not be compensated by money damages; that such damages would not be subject to accurate and correct computation; and that the plaintiffs would be required to bring a multiplicity of suits at law to recover such damages in full.

Appellees filed a motion to dismiss the bill. It was heard by the District Court, composed of three judges, under 28 U.S.C.A. § 380, and a decree was entered dismissing the bill on the ground that courts of equity would not assume jurisdiction of suits to protect invaded political rights. A fuller statement of the facts and of the ruling is set forth in Blackman et al. v. Stone, D.C., 17 F.Supp. 102. Upon that order the Supreme Court of the United States granted certiorari; and on March 8, 1937, vacated the decree of the District Court on the ground that the cause, so far as relief by injunction was sought, had become moot. This order was without prejudice to action by the District Court in relation to any matter which might remain in the cause. Blackman v. Stone, 300 U.S. 641, 57 S.Ct. 514, 81 L.Ed. 856.

On September 29, 1937, appellees filed their motion in the District Court to dismiss the bill. This was heard before the regular district judge and thereafter the three-judge court did not participate. The decree, after reciting that the plaintiffs had expressly abandoned all claim to injunctive relief as prayed for in their bill, held that the bill did not state a cause of action in equity and dismissed it for lack of equity. The ruling was based on the propositions that the bill merely sought redress for the deprivation of purely political rights which equity would not interfere to protect, and that the bill did not set forth an actual controversy within the terms of the Federal Declaratory Judgment Act, section 274d of the Judicial Code, 28 U.S.C.A. § 400. From that decree this appeal is prosecuted, and appellants now state their action to be for the recovery of money damages for being wrongfully deprived by appellees of their right to vote for the nominees above referred to.

Appellants contend that the court erred in the following particulars: In not holding that the plaintiffs' right to vote for the offices named was a civil right which the court was required to protect in equity; in refusing to hold that the Statutes of Illinois under which the order of the State officers of the Electoral Board was entered were in violation of the Federal Constitution; in not holding that appellants were entitled to maintain a class suit in equity to recover damages for the deprivation of appellants' right to vote for the candidates of their choice; in not holding that the action of the Electoral Board was void because it had no jurisdiction of the persons of the Communist candidates, nor of the subject matter of the nominating petition; and in not holding that the bill presented an actual controversy within the meaning of the Declaratory Judgment Act.

The ruling of the Supreme Court limited the subsequent action of the District Court to those issues remaining in the bill other than the relief sought by injunction, and appellants by their brief concede

that the only relief now sought is for money damages.

Uncertainty exists as to the proper construction of the Supreme Court's ruling in this case. In Duke Power Co. v. Greenwood County, 299 U.S. 259, 57 S.Ct. 202, 205, 81 L.Ed. 178, the Court said: "Where it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set aside the decree below and to remand the cause with directions to dismiss. * * * If it appears that supervening facts require a retrial in the light of a changed situation, the appropriate action of the appellate court is to vacate the decree which has been entered and revest the court below with jurisdiction of the cause to the end that issues may be properly framed and the retrial had." It is obvious that the Supreme Court in the Blackman Case followed the latter clause of this rule, and appellants urge that it must be inferred that the Supreme Court thought and indicated that there was merit in appellants' demand for damages, because otherwise there would have been an order of dismissal. True, there were other issues presented, aside from injunctive relief, which the three-judge court did not pass upon specifically, but generally it held there could be no right of recovery because all the rights sought to be vindicated and protected were political rather than civil, and that equity would not assume jurisdiction over them. This ruling seems to us to have passed on all the issues notwithstanding the fact that those based on injunctive relief afterwards became moot. At the last hearing the same ruling was made by the District Court for practically the same reasons, and without indulging in the inference suggested we think a correct result was reached.

If appellants were entitled to recover damages for the acts complained of, under section 1979 of the Revised Statutes, 8 U. S.C.A. § 43, it must be because the Illinois Election laws violate the Federal Constitution. If they are impervious to the constitutional attacks here made against them, it is clear that appellants have suffered no damages for which they can recover, because the acts complained of are purely administrative acts for which the officers, if they complied with the laws involved, cannot be held to respond in damages.

Even if we assume for the purposes of this case that the right to vote for Federal officers, and to participate in all other related matters such as nomination of candidates, and having their names printed on the ballots, are civil rights guaranteed by the Federal Constitution, U.S.C.A., under article 1, section 2, clause 1, and section 4, clause 1; article 2, section 1, clause 2; and under the Seventeenth Amendment; that these rights are accorded protection by the courts without regard to whether certain of their aspects are political in character; that the District Court had jurisdiction of this case; that this court has jurisdiction of this appeal; and that equity had jurisdiction of the alleged original cause of action, and of what remained therein after the decision of the Supreme Court, nevertheless we think appellees complied with the pertinent Illinois election laws in every respect, and that none of those laws are violative of the Federal Constitution.

It is contended by appellants that the Illinois Statutes governing the creation of new political parties and the nomination by minority parties of candidates for Federal elective officers and presidential electors are unduly burdensome and restrictive of appellants' rights to vote for such officers, and thereby contravene the provisions of the Federal Constitution which we have mentioned.

It is conceded that the States have the power to determine the method of choosing electors; that the electors in each State shall have the qualifications requisite for electors for the most numerous branch of the State Legislature; and that the times, places and manner of holding elections for Federal senators and representatives shall be prescribed in each State by its legislature, subject, however, to be altered by Congress in all respects except as to place. As to presidential electors, the Federal Constitution provides that each State shall appoint them as its legislature may direct, and that Congress may determine the time of choosing them, and the day upon which they shall give their votes.

Chapter 46, Illinois Revised Statutes 1937, section 291, provides that any group of persons desiring to form a new political party throughout the State, shall file with the Secretary of State a petition which shall declare the intention of the signers to form a new political party, and shall state its name, and contain a complete list of candidates of such party for all offices to be filled in the State at the next ensuing

504

election. This petition is required to be signed by not less than 25,000 qualified voters, including the signatures of not less than 200 qualified voters from each of at least 50 counties in the State. Section 293 provides for certain mechanical details and requires each signer in cities of over 10,000 population to give his street address. This section further provides that any person who has voted at a primary election to nominate a candidate for any office to be voted upon shall not be qualified to sign a petition of nomination for a candidate for the same office to be voted upon at the same general election.

Appellants contend that these requirements are unreasonable, arbitrary and unjust. It is obvious that the Illinois Legislature possesses a very wide latitude in determining the method and means by which a new political party may be permitted to have the names of its candidates printed on the ballots. This does not mean that it could arbitrarily make such requirements as would deprive a legal voter of his right to vote, or of his right to participate in all other related matters, such as the nomination of candidates with the added right of supporting them by his ballot. It is at once apparent, however, that to give each individual, or small group of individuals, the right to nominate a ticket and have it printed on the regular ballot would be unreasonable, impracticable, and not within the purview of any provision of the Federal Constitution. In view of the large and constantly increasing population of Illinois, we are convinced that the legislative requirements above referred to were neither unreasonable, arbitrary nor unjust, and were not unfairly discriminatory against appellants.

Section 291 of the Illinois Election Law provides that any political party which at the general election next preceding has polled five per cent or more of the entire vote cast in the State, or in the electoral district for which the nomination is made, shall be considered as an established political party respectively in the State or district. Appellants therefore urge that this legislative distinction between established political parties and those

not established is unjustifiable and unfair to minority parties. For the reasons above stated we think there is no merit in this contention.

It is further contended by appellants that section 288 of the law is invalid because it requires all voters to vote by printed ballots furnished by the State and forbids the use of other ballots or pasters. There is no merit in this contention. The section is a reasonable expression of the will of the Illinois Legislature, and is not in any manner inconsistent with any provision of the Federal Constitution.

Appellants further contend that the hearing before the Electoral Board on the objections to appellants' nominating petitions was violative of the due process clause of the Fourteenth Amendment, U.S.C.A. Const. and that no reasonable opportunity was afforded to appellants to know the objector's claims, and to meet them, and that the hearing was had without regard to judicial standards. The Illinois Statutes do not require that objections to a nominating petition shall be in any special form. Section 298a provides that the objector's petition shall be in writing; shall give his name and residence address; shall state fully the nature of the objections, his interest, and what relief is requested. The objection in this case was in the form of a telegram,[2] a copy of which was sent by registered mail to each of the plaintiff nominees on September 21, 1936, with notice that a hearing thereon would be had by the Electoral Board on September 25, 1936. Appellants appeared specially on that day for the sole purpose of objecting to the personnel of the Board as hereinbefore stated. The original membership having declined to serve, Justices Stone, Orr and Jones, pursuant to the Statute, declared themselves to be the Board and proceeded to hear the objections, whereupon appellants again entered a special appearance solely for the purpose of objecting to the jurisdiction of the Board to consider the objections to the nominating petition. The grounds assigned were that none of the candidates had been served with copies of any call to appear as required by chapter 46, sec. 298c; that no copy of the ob-

2 "Chicago, Illinois
"September 19, 1936
"Edward J. Hughes
"Secretary of State
"Springfield, Illinois
"Please accept this as formal pro-
test against certification of the Communist Party on the ballot for November election because of deficiency of petition, details to be presented at hearing to be held at the Electoral Board.
Robert Kinnare."

jections to the nominating petition had been sent to any of the candidates by any chairman of the Board; that the telegram did not constitute objections to the petition, or confer jurisdiction on the Board, or on the members to sit as such Board; and that the hearing was held within less than three days, contrary to statute, and without sufficient time extended to appellants to prepare their defense. No objection by appellants was made to the form or substance of the objections to the nominating petition.

The Board having heard all the evidence adduced, found and adjudged that it had jurisdiction of the subject matter; that all objections to jurisdiction of the parties had been waived, and that the nominating petition was insufficient in law.[3]

We agree with the Board's conclusions, and we are convinced that the record does not disclose an abuse of discretion in not extending further time to appellants in which to prepare their defense. Indeed counsel for appellants has not indicated to us any part of the record which discloses their request for further time or that the court ever denied such request. We find nothing in the record to indicate that there was a lack of due process as contemplated by the Fourteenth Amendment, either in the substance of the Statute or in its application.

That the election Board was properly constituted under the Illinois Statute, and that all the acts complained of complied with the provisions of the Illinois Statute, we think there can be no question, and we are convinced that the Declaratory Judgment Act is of no avail to appellants in seeking the relief which they now ask. That Act refers only to actual controversies, and as the only issue here presented is that of money damages it would seem there is no occasion for proceeding under the Declaratory Judgment Act. There is no pending issue as to the injunctive relief which was sought. Those phases of the case have become moot, and for this court to consider the correctness of those rulings by virtue of the Declaratory Judgment Act would be to consider the very questions which the Supreme Court has said were moot. This we think was not the intention of Congress.

Decree affirmed.

During the presentation of this case to this court, Judge EVANS suggested that he had sat as a member of the three-judge court at the original hearing, and would gladly withdraw if either party thought he was thereby disqualified. Counsel for all parties expressed the thought

---

[3] "The said Electoral Board * * * doth find:

"1. That the service of notice upon the said candidates was defective; that proper return of service by the Sheriffs was not made in all cases.

"2. That the said candidates' appearance on the hearing on the 25th day of September before the regular Electoral Board as composed of said State Officials was general and not special, and the only objection made by them was to the competency and capacity of said State Officers to act as an Electoral Board in this matter. That no objection on the ground of service was made or entered, and that the Justices of the Supreme Court were called upon to act as members of the Electoral Board at the request and instance of said candidates. Therefore, all objections to the lack of notice or of service returns by the Sheriff are deemed and held to be waived.

"3. That this Board has jurisdiction of the parties to this proceeding and of the subject matter.

"4. That the petition contains signatures from 63 counties. Of these it is admitted by petitioners that in 7 counties less than 200 qualified voters signed the petition, while in 10 other counties, as is shown by certificates of the respective County Clerks, less than 200 qualified voters who had not voted at the April, 1936 Primary, signed such petition.

"5. That the nominating petition filed in behalf of said candidates does not include the signatures of 200 qualified voters from each of at least 50 counties within this State as required by statute for the nomination of Independent candidates for such public office, and is therefore insufficient in law as a nominating petition.

"It is, therefore, the decision of this Board that the purported petition of said candidates of the Communist Party is not sufficient in law to entitle the said candidates names to appear on the ballot, and the objections thereto are therefore sustained."

Signed: Clyde E. Stone,
Warren H. Orr,
Norman L. Jones,
Electoral Board.

that he was not thereby disqualified, and disclaimed any desire that he should withdraw. He finished hearing the arguments, but did not participate in the consultation of the court, nor in the decision of the case.