Richard **ALLEN**, Lena **W. Dunn**, Washington Moore, McKinley Dunn, Nora Tyler, James Gilbert Tyler, Fannie M. Brown, Patrick H. Brown and James Donikens, Plaintiffs,

v.

**STATE BOARD OF ELECTIONS**, Mark Grizzard, Forest Lankford, Benjamin Griffin, Robert E. Garnett, J. S. Lipscomb, Thomas Brown and Paul Bell, Defendants.

Civ. A. No. 5041.

United States District Court
E. D. Virginia,
Richmond Division.

May 2, 1967.

S. W. Tucker, and Harold Marsh, Hill, Tucker & Marsh, Richmond, Va., Jack Greenberg, and James M. Nabrit, III, New York City, for plaintiffs.

Robert Y. Button, Atty. Gen., of Virginia, and R. D. McIlwaine, Asst. Atty. Gen., Richmond, Va., H. Benjamin Vincent, Commonwealth's Attorney for Greensville County, Emporia, Va., William C. Carter, Commonwealth's Attorney for Cumberland County, Cumberland, Va., and William R. Blandford, Powhatan, Va., for defendants.

## MEMORANDUM OF THE COURT

Before BRYAN and WINTER, Circuit Judges, and BUTZNER, District Judge.

BUTZNER, District Judge:

The plaintiffs, registered voters who are unable to spell accurately or to write legibly, attempted to cast their votes for a write-in candidate in the 1966 congressional election. Each pasted a sticker, upon which the write-in candidate's name was printed, on the official ballot under the names of listed candidates and appropriately marked the ballot immediately preceding the sticker. These ballots were not tabulated for the write-in candidate. Upon these undisputed facts, the plaintiffs seek a declaratory judgment that the Fourteenth Amendment's equal protection clause and the Voting Rights Act of 1965 (42 U.S.C. § 1973 et seq.) invalidates § 24–252, Code of Virginia 1950, insofar as this section denies to any voter, solely because of his inability to write, the privilege of casting a secret ballot for a candidate whose name is not printed on the official ballot. The plaintiffs pray that the defendants be enjoined from refusing to count any vote because the candidate's name was inserted on the official ballot by means other than the voter's handwriting. We conclude that the relief sought by the plaintiffs should be denied.

Pertinent provisions of the Virginia Constitution are:

"§ 27: *Method of Voting.*—All elections by the people shall be by ballot;
* * *

"The ballot box shall be kept in public view during all elections, and shall not be opened, nor the ballots canvassed or counted, in secret.

So far as consistent with the provisions of this Constitution, the absolute secrecy of the ballot shall be maintained."

"§ 28. *Ballots.*—The General Assembly shall provide for ballots without any distinguishing mark or symbol, for the use in all State, county, city and other elections by the people, and the form thereof shall be the same in all places where any such election is held. All ballots shall contain the names of the candidates and of the offices to be filled, in clear print and in due and orderly succession; but any voter may erase any name and insert another."

Section 24–252, Code of Virginia 1950, provides:

"*Insertion of names on ballots.*—At all elections except primary elections it shall be lawful for any voter to place on the official ballot the name of any person in his own handwriting thereon and to vote for such other person for any office for which he may desire to vote and mark the same by a check (✓) or cross (✕ or +) or a line (—) immediately preceding the name inserted. Provided, however, that nothing contained in this section shall affect the operation of § 24–251 of the Code of Virginia. No ballot, with a name or names placed thereon in violation of this section, shall be counted for such person."

■ The propriety of stickers is a matter for legislative, not judicial determination. Arguments for and against their use abound. Stickers have been lauded for facilitating voting and denounced as conducive to fraud and confusion. Their use has been approved under statutes permitting write-ins. Pace v. Hickey, 236 Ark. 792, 370 S.W.2d 66 (1963); O'Brien v. Board of Election Comm'rs, 257 Mass. 332, 153 N.E. 553 (1926); Dewalt v. Bartley, 146 Pa, 529, 24 A. 185, 15 L.R.A. 771 (1892); State on Complaint of Tank v. Anderson, 191 Wis. 538, 211 N.W. 938 (1927). Illinois forbade their use, Fletcher v. Wall, 172 Ill. 426, 50 N.E. 230, 40 L.R.A. 617 (1898), and the constitutionality of this ban has been upheld. Blackman v. Stone, 101 F.2d 500, 504 (7th Cir. 1939).

■ The plaintiffs' contention that § 24–252 violates the Fourteenth Amendment because it discriminates against illiterates is not supported by authority. To the contrary, exclusion of illiterate persons from voting, if no other discrimination is practiced, does not violate the Fourteenth Amendment.

In Lassiter v. Northampton Election Bd., 360 U.S. 45, 51, 79 S.Ct. 985, 990, 3 L.Ed.2d 1072 (1959), the Court said:

"We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction. Residence requirements, age, previous criminal record * * * are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters. The ability to read and write likewise has some relation to standards designed to promote intelligent use of the ballot. Literacy and illiteracy are neutral on race, creed, color, and sex, as reports around the world show. Literacy and intelligence are obviously not synonymous. Illiterate people may be intelligent voters. Yet in our society where newspapers, periodicals, books, and other printed matter canvass and debate campaign issues, a State might conclude that only those who are literate should exercise the franchise. * * * It was said last century in Massachusetts that a literacy test was designed to insure an 'independent and intelligent' exercise of the right of suffrage. * * * North Carolina agrees. We do not sit in judgment on the wisdom of that policy. We cannot say, however, that it is not an allowable one measured by constitutional standards."

■ *Lassiter* warns that " * * * a literacy test, fair on its face, may be employed to perpetuate that discrimination which the Fifteenth Amendment was designed to uproot." 360 U.S. 53, 79 S.Ct. 991. No evidence has been presented that Virginia's prohibition of stickers has been administered in a discriminatory manner. It has not been used to disfranchise any class of citizens. We conclude that § 24–252 does not violate the Fourteenth Amendment by discriminating between literate and illiterate voters.

■■ The equal protection clause of the Fourteenth Amendment and the Fifteenth Amendment are not the only standards by which state legislation governing the franchise must be measured. State laws affecting the right of suffrage must not contravene " * * * any restriction that Congress, acting pursuant to its con-

stitutional powers, has imposed." Harper v. Virginia Bd. of Elections, 383 U.S. 663, 665, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966); Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1731, 16 L.Ed.2d 828 (1966). The plaintiffs urge that requiring the name of the write-in candidate to be inserted in the voter's own handwriting violates the Voting Rights Act of 1965 (42 U.S.C. § 1973 et seq.). The constitutionality of pertinent sections of the Act is not in dispute. Cf. State of South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966).

■■ Virginia is subject to the Act, 42 U.S.C. § 1973b(b). Until the state is removed from the Act's provisions, all tests or devices for determining eligibility to vote are suspended. 42 U.S.C. § 1973b (a).

■ The plaintiffs rely on these sections of the Act:

42 U.S.C. § 1973b(a):

" * * * no citizen shall be denied the right to vote in any Federal, State, or local election because of his failure to comply with any test or device in any State * * *."

42 U.S.C. § 1973b(c):

"The phrase 'test or device' shall mean any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class."

42 U.S.C.A. § 1973i(a):

"No person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under any provision of this subchapter or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote."

Section 24–251, Code of Virginia 1950, authorizes a judge of election, upon request, to assist a physically handicapped voter prepare his ballot, and allows a blind voter to be aided by a person of his choice. The assistants are enjoined to secrecy. For any corrupt violation of their duties, they may be punished by confinement in jail for not less than one nor more than twelve months. No provision was made for helping an illiterate person because under Virginia law all voters had to demonstrate ability to read and write.

After the enactment of the Voting Rights Act of 1965, Virginia directed its registrars to help illiterate persons register. The Board of Elections recognized that illiterates might need assistance with their ballots. For this reason, it instructed all judges of election:

"On August 6, 1965, the 'Voting Rights Act of 1965' enacted by the Congress of the United States became effective and is now in force in Virginia. Under the provisions of this Act, any person qualified to vote in the General Election to be held November 2, 1965, who is unable to mark or cast his ballot, in whole or in part, because of a lack of literacy (in addition to any of the reasons set forth in Section 24–251 of the Virginia Code) shall, if he so requests, be aided in the preparation of his ballot by one of the judges of election selected by the voter. The judge of election shall assist the voter, upon his request, in the preparation of his ballot in accordance with the voter's instructions, and shall not in any manner divulge or indicate, by signs or otherwise, the name or names of the person or persons for whom any voter shall vote.

These instructions also apply to precincts in which voting machines are used."

The Attorney General of Virginia asserted, and the plaintiffs do not controvert, that these instructions apply while the Voting Rights Act of 1965 is effective in the state.

The requirement that a write-in candidate's name be inserted in the voter's handwriting is not a test or device defined in 42 U.S.C. § 1973b(c). The re-

**222**

quirement did not preclude the plaintiffs from registering or from voting. Under present Virginia statutes and regulations of the Board of Elections, an illiterate can cast a valid write-in ballot by enlisting the assistance of a judge of election. No evidence was offered that any judge of election denied any illiterate voter the confidential assistance to which he is entitled.

Judgment will be entered for the defendants.