## Petrey, Trustee, et al. v. Holliday, et al.

(Decided December 18, 1917.)

## Motion to Dissolve Injunction.

1. Injunction—Application for—Before Whom May Be Made.—Under section 273 of the civil code an injunction that has been refused by the court in which the action is pending cannot be granted by any circuit judge, clerk, county judge or justices, nor can an injunction that has been refused by a circuit judge be granted by a clerk, county judge or justices. But the only case in which it can not be granted by a circuit judge is when it has been refused by the court in which the action is pending, and the fact that it has been refused by one circuit judge does not interfere with the right of another circuit judge to grant it.

2. Injunction—Application for—Before Whom May Be Made.—But no injunction can be granted by a circuit judge outside of the district in which the case is pending unless it appears that the circuit judge of the district is absent from the district or disqualified to sit.

3. Injunction—Remedy of Party Asking It When Injunction Has Been Dissolved by Circuit Judge.—When an injunction granted by the clerk, county judge or justices upon notice is dissolved by a circuit judge, then the sole remedy of the party asking the injunction is to bring his application to a judge of the Court of Appeals under section 297 of the code; but if it was granted without notice by one of these inferior officers and afterwards dissolved by a circuit judge, then the remedy of the party applying is to go before the circuit judge of the district in which the action is pending, or if he be absent from the district or disqualified to sit, to another circuit judge.

4. Injunction—Granted Upon Notice—Dissolution of—Application to Reinstate.—Where notice to the defendants of the fact that' an application will be made to the circuit clerk, judge or justices has been given and the injunction granted by one of these officers has been dissolved by a circuit judge, the plaintiff may apply for its reinstatement before a judge of this court, as provided in section 297 of the code.

5. Injunction—Practice When Circuit Judge of the District Is Disqualified to Sit—Who May Act.—When an application to grant, dissolve or reinstate an injunction is made before· the circuit·

judge of the district in which the action is pending and he is disqualified to sit, he should transfer the application to some other circuit judge.

6. **Judges—Disqualification of to Grant an Injunction.**—A circuit judge who is related in the second degree to one of the plaintiffs is disqualified to grant an injunction or hear or determine any motion made by the plaintiffs, if timely objection is made to his sitting; and if he refuses to vacate, a judge of this court has power to review his ruling and to pass on the question of his qualification and to dissolve an injunction granted solely on ground of disqualification of judge.

7. **Judges—Disqualification of to Grant Injunction on Account of Relationship.**—We have no constitutional provision or statute disqualifying a judge on acount of relationship to one of the parties, but section 968 of the Kentucky Statutes, providing that "if either party shall file his affidavit that the judge will not afford him a fair and impartial trial . . .," is broad enough to cover disqualification on account of relationship.

8. **Judges—Disqualified—Right or Wrong of Decision Will Not Be Inquired Into.**—The principle that no judge who is admittedly disqualified on account of relationship shall pass on the rights of objecting suitors, is too vital to be affected by the right or wrong of the ruling.

9. **Judges—Disqualified—Is Decision Void?**—Whether a judgment or order by a judge disqualified on account of relationship to one of the parties is void for want of jurisdiction, is not determined.

H. C. FAULKNER for petitioners, S. B. Holliday, et al.

NICKELL & TYNES and MILLER, WHEELER & CRAFT for respondents, P. G. Petrey, Trustee, et al.

OPINION BY JUDGE CARROLL—Sustaining motion to dissolve injunction.

On September 4, 1917, P. G. Petrey, as trustee, and the Lotts Creek Coal Co. filed their petition in equity against S. B. Holliday and several other defendants, setting up, in substance, that Petrey, as trustee, was the owner in fee of all the coal, iron, gas and other mineral substances in a described boundary of land, with the right to use the timber standing on the land; that Petrey had leased his right, title and interest in the coal in the land to the Lotts Creek Coal Co., with the right to go upon the land, use certain timber thereon, and build tipples, tramways, warehouses, shops, houses and other buildings necessary for the mining and removing of the coal; that Holliday and the other defendants were giving it out to the great injury of the plaintiffs, that the

plaintiffs were not the owners of the coal, gas or other mineral products in the land, nor did they have the right to use the timber thereon or to put on the land any tipples, shops, buildings, roads or other equipment necessary to develop it; that the defendants, in furtherance of their claim of ownership to the land and the mineral interest therein, had let to the Southern Construction Co. the right to build certain houses on the land that would injuriously interfere with the rights of the plaintiffs.

On the averments of the petition they asked for judgment, holding that Petrey, as trustee, was the owner of the mineral interests in the land, with the right to do the things he claimed the right to do in his petition; and they also asked for an injunction restraining the defendants, Holliday and others, from doing the things it was asserted in the petition they were about to do.

This petition, which was verified, further set out that no injunction had been granted or refused by the court or any circuit judge, and that the regular circuit judge of the district was then absent from Perry county and the district.

Upon filing the petition in the clerk's office of the circuit court of Perry county, the plaintiffs moved the circuit clerk, without notice to the defendants, to issue a temporary order of injunction restraining the defendants from doing the things which the petition asked they be enjoined from doing; and thereupon the clerk did, on September 4th, issue such an injunction as was requested.

Thereafter, on September 29, 1917, the defendants, upon notice and showing that the regular judge of the circuit court, embracing the district in which Perry county was situated, was absent from the county and the district, made a motion before Judge Adams, circuit judge of another, adjoining district, to dissolve the temporary restraining order granted by the clerk of the Perry circuit court. Upon hearing this motion, Judge Adams, in the following order, dissolved the restraining order:

"This action came before the undersigned, as judge of the Twenty-third Judicial District, upon motion of the defendants to dissolve the temporary restraining order granted herein by W. C. Combs, clerk of the Perry circuit court, without notice, on the fourth day of September, 1917. And came the defendants and filed notice of the said motion, duly executed on the plaintiffs, and also

the affidavit of Tolbert Holliday, showing the absence of the Hon. John C. Eversole from the Twenty-third Judicial District at this time, and since the suing out of the said restraining order, and also a stipulation of the parties by their attorneys showing that office copies of the pleadings and restraining order might be read on the trial of this motion. And thereupon came the plaintiffs by their attorneys and moved the undersigned judge at the same time to grant them an order of injunction herein until the further orders of the Perry circuit court, in accordance with the prayer of the petition, and produced and read to the court the affidavits of E. M. Denham, C. M. Davis, A. S. Petrey and J. B. Eversole, with maps attached and also read the original deed from E. C. Holliday and wife to R. C. Reams, trustee, dated March 25, 1910, and the original deed from R. C. Reams, trustee, to P. G. Petrey, trustee, dated May 31, 1917, and the original lease from P. G. Petrey, trustee, to the Lotts Creek Coal Co., and closed in chief.

"Thereupon the defendants offered to produce their evidence orally, to which the plaintiff objected, and their objections being overruled, the defendants were allowed to testify orally, and the court heard the evidence of Tolbert Holliday, E. C. Holliday, Schyler Vermillion and S. B. Holliday, and the evidence of A. S. Petrey and J. B. Eversole, in rebuttal, and said motions were then submitted.

"The judge is of the opinion and so decides that the temporary restraining order granted by the clerk was prematurely issued, and that the same be now set aside and held for naught, and the motion of the plaintiffs for an injunction is overruled, to all of which the plaintiffs except."

On September 28th, the defendants filed in the clerk's office their answer and counterclaim putting in issue all the averments of the petition and setting up their right, title and interest in and to the land and minerals therein, and on October 22nd the plaintiffs filed in the clerk's office their reply.

After this, on October 27, 1917, the plaintiffs, pursuant to a notice previously given, appeared before Judge John C. Eversole, circuit judge of the district including Perry county, in the court house at Hazard, Ky., and moved Judge Eversole, not sitting as the court, but as a circuit judge in vacation, to grant an injunction similar to the one that had been issued by the clerk of the Perry circuit court and dissolved by Judge Adams.

When this motion was made, the defendants, Holliday and others, entered a motion before Judge Eversole that he vacate the bench and decline to hear or dispose of the motion then pending before him to grant an injunction, and in support of this motion they filed before and with Judge Eversole the affidavit of one of the defendants, setting out that John B. Eversole, a nephew by blood of Judge Eversole, was a large stockholder of the plaintiff, Lotts Creek Coal Co., a corporation, and in addition to the interest he owned in this corporation and his other connections therewith, one P. G. Petrey, as trustee, held the legal title to all the coal and mineral in the land in controversy for the beneficiaries named in the trust deed, one of whom was John B. Eversole, who was the owner of a large and valuable interest, amounting to not less than one-sixth nor more than one-fourth of the coal and mineral on the land in controversy independent of his connection with the Lotts Creek Coal Co.; that "because of the relationship of John B. Eversole to the said circuit judge, as hereinbefore set out, it would place the said circuit judge, as well as the litigants in this action, in an embarrassing position if he should try or attempt to try this cause, and because of said relationship and the interests of the said John B. Eversole, as hereinbefore set out, the said circuit judge, as affiant believes, and, therefore, charges, could not and would not give these defendants a fair and impartial trial of this action, and that because of said relationship and interests as above stated, it would not be proper for the said circuit judge to pass upon any motions or proceedings in this case, and he could not and would not, as affiant believes and charges, give him or any of the defendants herein a fair and impartial trial and hearing upon any of said motions or proceedings or upon the trial of this case."

Thereupon, as the order made by Judge Eversole recites, "having considered said motion and said affidavit and being advised, overrules same and declines to vacate the bench and the hearing of this motion and the case, to which ruling of the court the defendants at the time excepted." And thereupon the defendants filed what is styled a plea in abatement, in which the proceedings had before and the order made by Judge Adams were set up in bar of the motion made by the plaintiffs that Judge Eversole issue an injunction as prayed for in the petition. This motion, as appears from an order

made by Judge Eversole, was also considered and over-ruled, to which ruling the defendants excepted.

After disposing of these motions and pleas Judge Eversole proceeded with the motion for an injunction, and after hearing the evidence offered by both parties, issued an order of injunction conforming to the prayer of the petition and substantially the same as the order of injunction issued by the clerk and dissolved by Judge Adams. Thereafter, in due time, the defendants made a motion before me, as a judge of the Court of Appeals, to dissolve the injunction issued by Judge Eversole.

In considering this motion I had, pursuant to a rule of court, the assistance of Chief Justice Settle and Judges Miller and Hurt, who concur in what I have written. We did not, however, look at all into the merits of the case, because we thought Judge Eversole on the filing of the affidavit requesting him not to hear or dispose of the motion, should have declined to sit, although except for this affidavit and the reasons set out therein, we think he had authority to hear the motion and either grant or refuse the injunction applied for, as to him seemed right and proper, and therefore aside from the question of disqualification the motion setting up the order made by Judge Adams in bar of the proceeding before Judge Eversole was properly overruled.

The plaintiffs could not apply to a judge of the Court of Appeals, as provided in section 297 of the code, to reinstate the injunction dissolved by Judge Adams, because this injunction was issued by the circuit court clerk without notice to the defendants, although if notice to the defendants of the fact that application would be made to the circuit clerk to issue an order of injunction had been given to them, then an application to reinstate this injunction after it had been dissolved by Judge Adams could have been made under section 297 before a judge of the Court of Appeals. Moss v. Eubank, 176 Ky. 739.

In view of the conclusion we have reached that Judge Eversole was disqualified to hear or dispose of the motion, and for this reason the injunction should be dissolved, it would seem unnecessary to consider the right of Judge Eversole to grant an injunction after it had been dissolved by Judge Adams, and we would not do so except for the fact that on a return of the case application may be made to another circuit judge, who would be confronted by the same plea in bar and the same objection presented to Judge Eversole, that the action

of Judge Adams was a bar to the consideration of the motion by any other circuit judge, and so to settle this question of practice we have thought it proper to dispose of it here.

Its solution depends on the construction of section 273 of the Civil Code, reading: "The injunction may be granted at the commencement of the action, or at any time before judgment by the court, or by any circuit judge, or by the clerk of the court or the county judge if the judge of the court be absent from the county, or by two justices of the peace, if the judge and the clerk of the court and the county judge be absent from the county. No injunction shall be granted by any of the foregoing officers unless it appears from the affidavit of the party applying therefor that it has not been refused by the court; nor shall such injunction be granted by a clerk or county judge or justice unless it appear from such affidavit that it has not been refused by the court or any circuit judge. No injunction or temporary restraining order shall be granted until after the petition seeking the injunction shall be filed. No injunction or temporary restraining order shall be granted by any circuit or other judge of similar jurisdiction in any action pending outside of the circuit or county wherein such judge shall preside, unless it shall appear from the affidavit of the plaintiff that there is no circuit or other judge of similar jurisdiction present at the time in the judicial district where the action is pending."

It will be observed that under the first part of this section an injunction may be granted at the commencement of the action or at any time before judgment by the court; that is, the court in which the action is pending, or by any circuit judge, or by the clerk of the court, or the county judge, if the judge of the court be absent from the county, or by two justices of the peace if the judge and the clerk of the court and the county judge be absent from the county, but that no injunction shall be granted by any of the foregoing officers unless it appears that it has not been refused by the *court*. In other words, under this part of the section an injunction that has been refused by the *court* in which the action is pending can not be granted by any circuit judge, clerk, county judge, or justice of the peace.

The section further provides that an injunction shall not be granted by a clerk or county judge or justice of the peace unless it shall appear that it has not been refused by the court or any circuit judge. And so it will

be noticed that a clerk, county judge or justice cannot grant one that has been refused by the *court or a circuit judge.*

It will be further noticed that the code makes a difference between a *court* and *circuit judge.* When the *court* in which the action is pending has refused an injunction, then no circuit judge, county judge, clerk, or justice can grant an injunction, and if it has been refused by a *circuit judge* not acting as a court, but sitting in vacation, neither a clerk, county judge nor a justice can grant it. Reading these two parts of the section together, as of course should be done, we find that after an injunction has been refused by any *circuit judge,* it cannot be granted by a clerk, county judge, or a justice, and if refused by the *court,* it cannot be granted by either a circuit judge or clerk, county judge or justice.

But the only case in which it cannot be granted by a circuit judge is when it has been refused by the *court;* that is, the court in which the action is pending. The fact that it has been refused by one circuit judge does not interfere with the right of another circuit judge to grant it. It is true that under this construction a party seeking an injunction may apply to as many different circuit judges as he pleases and continue until he finds one that will grant it, although it may have been refused by one or more circuit judges; but this follows from the reading of the section and the distinction made between the court in which the action is pending and a circuit judge. This right, however, to apply to different circuit judges, or to any circuit judge out of the circuit district in which the action is pending, is much restrained by the provision that no injunction shall be granted by a judge outside of the district in which the case is pending, unless it appears that the circuit judge of the district is absent from the district in which the action is pending or disqualified. It is only when the judge is absent from his district or disqualified to sit that application can be made to another circuit judge.

We are further of the opinion that when an injunction granted by the clerk, or the county judge, or justice, upon notice, is afterwards dissolved by a circuit judge, then the sole remedy of the party asking the injunction is to bring his application to a judge of the Court of Appeals under section 297, but if it was granted without notice by one of these inferior officers, as was the injunction in this case, and afterwards dissolved by a circuit judge, as was this injunction, then the remedy of the

party applying for the injunction is to go before the circuit judge of the district in which the action is pending, or, if he be absent from the district or disqualified to sit, to another circuit judge.

Coming now to consider the objection of the defendants that Judge Eversole, on account of his relationship to John B. Eversole, was disqualified to hear or dispose of the application for an injunction, we find no dispute as to the facts, as counsel for the plaintiffs admit the truth of the affidavit showing his relationship to the plaintiff, John B. Eversole, and the large property interest of John B. Eversole in the matter in controversy; but in defense of his right to sit they say, first, that the error, if one was committed by Judge Eversole in not vacating the bench, does not render the order of injunction void; and, second, that a judge of the Court of Appeals acting on a motion to dissolve an injunction has no power to inquire into the action of a circuit judge in refusing to vacate the bench, even if it be admitted that he should have done so. In other words, that the circuit judge must decide for himself whether he is or is not disqualified to sit in the case and hear and dispose of the motion, and his action in this matter is final and unreviewable by a judge of this court on a motion to dissolve the injunction that the judge, although disqualified to sit, has granted.

We do not agree with counsel in either of these contentions. On the contrary, we are well satisfied that a judge of this court, on a motion to dissolve an injunction granted by a circuit judge or the court, has full authority to inquire into the question whether the judge or court was disqualified by interest or relationship or other sufficient cause to sit in the case when timely objection to his sitting has been made by the party opposing the application for an injunction; and also jurisdiction to set aside upon this ground alone any order that he has made respecting the case or in granting the injunction, when it appears that the judge or court granting the injunction was so disqualified by interest or relationship or other sufficient reasons as that he should not hear or dispose of the matter. It would be a curious state of affairs if a judge of this court, with full and unrestrained authority to dissolve injunctions, could not do so for one of the chief reasons demanding its dissolution.

In this connection it is perhaps worthy of notice that this is the first time in its history, so far as our inves-

tigation goes, that this court has ever been called upon to set aside an order or judgment made by a court or circuit judge on the ground that he was disqualified to sit on account of his relationship to one of the parties to the litigation, although in other jurisdictions the question has come up many times.

It might also be here observed that in nearly all the states there is either a constitutional or statutory provision expressly prohibiting a judge from sitting in a case in which he is related to either of the parties, and these provisions have uniformly been construed with great strictness in order to prevent the suspicion of unfairness that would taint a judgment given in favor of a relative, however just it might be. An illustrative case on this subject is: Crook v. Newborg, 124 Ala. 479, 82 Am. St. Rep. 190, where the court said: "Next in importance to the duty of rendering a righteous judgment is that of doing it in such manner as will beget no suspicion of the fairness or integrity of the judge. The principle of disqualification is to have no technical or strict construction, but is to be broadly applied to all classes of cases where one is appointed to decide the rights of his fellow citizens." To the same effect are Roberts v. Roberts, 115 Ga. 259, 90 Am. St. Rep. 108; State v. Wall, 41 Fla. 463, 79 Am. St. Rep. 195; Fowler v. Brooks, 64 N. H. 423, 10 Am. St. Rep. 425.

In Horton v. Howard, 79 Mich. 642, 19 Am. St. Rep. 198, the court, in speaking of a statute on the subject, said: "This statute, mandatory in its terms, voices the universal sentiment of manhood excluding judges from sitting in cases where they are parties or are interested. It extends and applies the prohibition of the common law relative to jurors sitting in cases of kinship or affinity by marriage to judges, and disqualifies them within the prohibited degrees, which, at the common law, have been held to extend to the ninth. . . .

"The next question is, whether the decree is void or merely voidable. No judge can sit in his own cause. Should he do so, a decree rendered by him in his own favor would be utterly void. If he cannot sit, his seat, in a judicial sense, is vacant, and his acts are without judicial sanction. The inhibition of the statute is the same where he is related to a party to the cause, and the result is the same. The authorities are numerous and nearly uniform which hold that a judgment or decree rendered by a judge contrary to a statute like ours is void, and may be attacked collaterally. . . .

"The objection reaches further than the mere rights of the parties to the suit. It involves the administration of justice before unprejudiced and impartial tribunals whose judicial acts the public are interested in placing above the plane of criticism or reproach. . . .

" 'It is not a matter of discretion with the judge or other person acting in a judicial capacity, nor is it left to his own sense of propriety or decency; but the principle forbids him to act in such capacity at all when he is thus interested, or when he may possibly be subjected to the temptation.'

" 'The immediate rights of the litigants are not the only objects of the rule. A sound public policy, which is interested in preserving every tribunal appointed by law from discredit, imperiously demands its observance.' " To the same effect are: Kelly v. Neely, 12 Ark. 657, 56 Am. Dec. 288; Moses v. Julian, 45 N. H. 52, 84 Am. Dec. 114.

In Yazoo & M. V. Railroad Co. v. Kirk, 102 Miss. 41, 42 L. R. A. (N. S.) 1172, the court said: "All are interested in the integrity, independence, and impartiality of the judiciary, the most important and powerful branch of our government. Not only must the judges presiding over the courts be honest, unbiased, impartial, and disinterested in fact, but it is of the utmost importance that all doubt or suspicion to the contrary must be jealously guarded against, and, if possible, completely eliminated."

But we have in this state no express constitutional or statutory declaration on the subject, and the only statute treating of the grounds for which a judge may be requested to vacate the bench is section 968 of the Kentucky Statutes, providing, in the most general terms, that he shall do so "if either party shall file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial. . . ." This statute, however, is broad enough, as we think, to reach the disqualification of relationship and to authorize the filing by a litigant of an affidavit that the judge will not afford "a fair and impartial trial" when his adversary is related as closely to the Judge as was John B. Eversole, although we do not, of course, mean to be understood as holding that a more distant relationship would not be equally as disqualifying. In many of the states the relationship in the sixth and even in the ninth degree is deemed sufficient. See cases in note to Bliss v. Caille Brothers Co., 12 A. & E. Ann. Cases 513; while here the relationship was only in the second degree, as

John B. Eversole was only two degrees removed from the common ancestor. Blackstone's Commentaries, book 2, page 207.

But entirely aside from this statute, and although common law authority is wanting, we are of the opinion that no express constitutional or statutory provision is necessary to enable one of the parties to a suit pending in court, or before a judge in vacation, to remove the judge when it is plainly made by affidavit to appear that he should not sit on account of his kinship to one of the parties litigant; because if there is one principle more than another that is and should be fundamentally true in the administration of justice, and that constitutes the chief cornerstone of court proceedings, it is that no citizen shall be denied the right to have his case heard before a fair and impartial judge in the broadest meaning of these words.

The provision in the 14th section of the Bill of Rights, that "All courts shall be open and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay," would have little meaning if the litigant were compelled, and that without remedy, to submit to having his personal or his property rights adjudicated by a judge who, from interest, kinship, or other sufficient cause, was disqualified to hear and determine his case.

Our judicial system in its relation to the peace and order of society, and the security of the citizen in the enjoyment of the right to life, liberty and property, has a larger, more personal and influential a part than any other branch of the government, and it is indispensable that judges, in whose keeping the constitution has placed so much power to be exercised in protecting the rights and redressing the wrongs of the citizen, should come to every case, as well as to every question submitted for decision, in that attitude of mind that will enable them to hear and determine it in the manner so well described in the statutory oath that every judge must take, that "I will administer justice without respect to persons and do equal right to the poor and to the rich and that I will faithfully and impartially discharge all the duties incumbent upon me as judge, according to the best of my abilities."

If the judge when sitting either in vacation or as a court is not qualified to discharge the high functions of

his office with unbiased judgment, free from the influ-
ence of interest in the subject-matter of the controversy
or arising from partiality or kinship to, or hostility
for, one of the parties litigant, it is manifest that he
cannot dispense justice and determine the rights of the
case with that fairness and equality whch it is es-
sential a judge should have. So important are the func-
tions of judges of circuit and higher courts, and so inti-
mately do they have to deal with every aspect of the
life and affairs of the citizens, that it has come to be a
matter of general sentiment among our people that ju-
dicial integrity is the first and highest qualification a
judge can possess, and the truth of this popular and
widespread opinion no one will be found to deny; and
so it is a matter of the highest moment, not only to the
parties affected, but to the public generally, that it may
be said of every judge, however erroneous his decision
may have been, that the fault did not have its origin in
his personal attitude toward either of the litigants, but
was the result of an honest mistake, after bringing to the
case an unprejudiced mind and giving to its considera-
tion the best judgment of which he was capable. When
this can be said of the judge, the unsuccessful party has
no just cause of complaint, because all that any litigant
has the right to demand is the honest judgment of an un-
biased, patient, careful, conscientious judge. But to this
every litigant is entitled.

Now can this be said when the judge sits in a case in
which his nephew by blood is one of the parties in in-
terest and the dicision is in his favor? The inquiry we
think furnishes its own answer.

In thus making it plain that a judge ought not to sit in
any case or in the hearing of any motion where objec-
tion is made because of his kinship to one of the parties·
in interest, we do not mean to intimate that Judge Ever-
sole, in making his decision, was influenced by the rela-
tionship between him and John B. Eversole, nor have we
looked into the right or wrong of his decision. It would
not make a particle of difference in our conclusion that
the injunction should be dissolved even if an investigation
showed that it was properly granted.

The principle that a judge who is admittedly disqual-
ified on account of relationship shall not pass on the
rights of objecting suitors, is too vital to the correct ad-
ministration of justice to be affected by the right or
wrong of the ruling complained of. This far we may go
without determining whether a judgment or order by a

judge so disqualified is void for want of jurisdiction, although many courts hold that it is. See cases in note to Bliss v. Caille Brothers Co., 12 A. & E. Ann. Cases 513.

Judge Eversole has made a fine reputation on the bench for integrity, industry and ability, and we may readily assume that in refusing to vacate the bench he was following a custom of long standing in his district that is thus described by counsel for plaintiff: "It is true, admittedly true, that the judge of that district is an uncle of John B. Eversole, who is interested in the subject of this litigation, and a witness in this case; but it may not be unknown to this court that it is difficult to get the other circuit judges in our mountain districts to hear these cases; and it may not be known to this court that such is the wide extent of relationship of the present judge of the Perry circuit court to the people of each county of his district, that the question of kinship is rarely made, unless the judge raises it himself; this in order to dispatch any business whatever in those courts. The same was true of two former circuit judges of that district, to-wit, the Honorable L. D. Lewis and the Honorable T. G. Lewis, both of whom had extensive relationship in said district."

But, of course, we cannot give our approval to such a custom or pass it by as an ordinary incident of court procedure, to be left to the discretion of the presiding judge, because we cannot but think that such a custom, if pursued in that or other counties or districts, must inevitably bring where it is in practice the administration of justice into disrepute and fill the public mind with suspicion that the courts are not open on equal terms to all litigants.

The judge is not the only one concerned in the just and correct course of justice. Nor, indeed, are the litigants the only ones to be consulted. The public generally have the right to feel that there is no favoritism in the court house; that there all men stand equal before the law; and that there justice will be dispensed to all with an even hand. The fact that the judge may be unconscious of any bias and may be sure that interest or relationship could not dispose him to favor one side or the other, is not enough. The unsuccessful litigant has also the right to know that the decision was the offspring of a fair and impartial mind, and this satisfying assurance he cannot have if there are before his eyes facts or circumstances reasonably sufficient to create the belief that influences outside of the record operated in making the decision.

The motion to dissolve the injunction is sustained, and the injunction dissolved.