## Bradley v. Commonwealth.

(Decided March 4, 1927.)

### Appeal from Floyd Circuit Court

1. Judges—Statute Authorizing Affidavit that Judge Will Not Afford Impartial Trial Covers Disqualification by Relationship to Deceased in Murder Trial (Ky. Stats., Section 968).—Ky. Stats., section 968, authorizing party to file affidavit that judge will not accord him fair and impartial trial, is broad enough to reach disqualification of relationship to, deceased in murder trial.

2. Judges—Refusal of Judge, who was Deceased's Cousin, to Vacate Bench for Murder Trial, Held Erroneous.—Refusal of judge, who was cousin of deceased, to vacate bench for murder trial on motion of accused, held erroneous, though record showed no failure on his part to give accused a fair and impartial trial; general public, as well as judge and litigants, being concerned in correct course of justice.

JOE P. TACKETT, JOHN CAUDILL and WM. DINGUS for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Rees—Reversing.

The appellant, Erve Bradley, was jointly indicted with his brothers, Green Bradley and Lewis Bradley, in the Floyd circuit court charged with the murder of Leck Conley. The indictment also charged appellant with being present and aiding and abetting Green Bradley in the killing of the deceased. Green Bradley and Lewis Bradley were not apprehended and Erve Bradley, upon his separate trial, was found guilty of manslaughter and his punishment fixed at confinement in the penitentiary for 21 years, and he has appealed.

The evidence for the commonwealth, briefly stated, tends to show that the deceased was driving a wagon along a public highway, his mother, wife, daughter, two sisters and a brother also being on the wagon. The appellant and his brothers, who were riding horses, overtook the deceased and an altercation occurred, during which Green Bradley stabbed and cut the deceased a number of times with a knife and from the effects of the wounds deceased died a few hours thereafter. A number of witnesses for the commonwealth testified that appellant and his brother, Lewis Bradley, held the deceased

while Green Bradley cut him with a knife.    The evidence
for the appellant tends to show that he tried to act as
peacemaker and took no part in the altercation.    A more
detailed statement of the facts is unnecessary for the
purposes of this opinion.

When the case was called for trial the appellant, by
counsel, moved the court to vacate the bench because the
trial judge was a cousin of the deceased, Leck Conley,
the appellant's affidavit in support of the motion recit-
ing that the trial judge would not afford him a fair and
impartial trial because of his relationship to the deceased,
and had become so embittered against appellant that he
ought not to preside at the trial.    The motion to require
the trial judge to vacate the bench was overruled and
the appellant relies on this, among other alleged errors,
as a ground for reversal.

We have no constitutional or statutory provision
expressly inhibiting a judge from trying a case because
of his relationship to any of the parties, but section 968,
Ky. Statutes, provides that a party may file with the
clerk of the court his affidavit that the judge will not
afford him a fair and impartial trial, and in Petrey v.
Holliday, 178 Ky. 410, 199 S. W. 67, it was held that this
statute is broad enough to reach the disqualification of
relationship, the court saying:

> "But entirely aside from this statute, and al-
> though common law authority is wanting, we are of
> the opinion that no express constitutional or statu-
> tory provision is necessary to enable one of the
> parties to a suit pending in court, or before a judge
> in vacation, to remove the judge when it is plainly
> made by affidavit to appear that he should not sit
> on account of his kinship to one of the parties liti-
> gant; because if there is one principle more than
> another that is and should be fundamentally true in
> the administration of justice, and that consitutes
> the chief cornerstone of court proceedings, it is that
> no citizen shall be denied the right to have his case
> heard before a fair and impartial judge in the
> broadest meaning of these words."

The court in that case further said:

> "Our judicial system in its relation to the
> peace and order of society, and the security of the

citizen in the enjoyment of the right to life, liberty and property, has a larger, more personal and influential part than any other branch of the government, and it is indispensable that judges, in whose keeping the Constitution has placed so much power to be exercised in protecting the rights and redressing the wrongs of the citizen, should come to every case, as well as to every question submitted for decision, in that attitude of mind that will enable them to hear and determine it in the manner so well described in the statutory oath that every judge must take, that 'I will administer justice without respect to persons and do equal right to the poor and to the rich and that I will faithfully and impartially discharge all the duties incumbent upon me as judge, according to the best of my abilities.'

"If the judge when sitting either in vacation or as a court is not qualified to discharge the high functions of his office with unbiased judgment, free from the influence of interest in the subject-matter of the controversy or arising from partiality or kinship to, or hostility for, one of the parties litigant, it is manifest that he cannot dispense justice and determine the rights of the case with that fairness and equality which it is essential a judge should have. So important are the functions of judges of circuit and higher courts, and so intimately do they have to deal with every aspect of the life and affairs of the citizens, that it has come to be a matter of general sentiment among our people that judicial integrity is the first and highest qualification a judge can possess, and the truth of this popular and widespread opinion no one will be found to deny; and so it is a matter of the highest moment, not only to the parties affected, but to the public generally, that it may be said of every judge, however erroneous his decision may have been, that the fault did not have its origin in his personal attitude toward either of the litigants, but was the result of an honest mistake, after bringing to the case an unprejudiced mind and giving to its consideration the best judgment of which he was capable. When this can be said of the judge, the unsuccessful party has no just cause of complaint, because all that any liti-

gant has the right to demand is the honest judgment of an unbiased, patient, careful, conscientious judge. But to this every litigant is entitled."

In the Petrey case the judge was related to one of the parties of record, but the spirit of the rule which disqualifies a judge because of relationship is broad enough to include relationship to the deceased in a murder trial.

Many of the states have statutes providing that no judge shall preside on the trial of any cause where any of the parties shall be connected with him by affinity or consanguinity. And most of the courts in construing the word "parties" have held that it should not be construed in a technical and restricted sense to mean a party to the record, but that it should be held to mean any one who is represented by the parties to the record.

In Yazoo & M. V. R. Co. v. Kirk, 58 So. 710, 102 Miss. 41, the court said:

"We are convinced that the broad and liberal rule of construction is the soundest and wisest rule, and, adopting this rule as our guide, we conclude that the circuit judge was disqualified to preside at the trial of this case. If the numerical weight of authority rested with the narrow view, we would unhesitatingly follow the lead of those courts adopting a broad and liberal construction of statutes and constitutions similar in language to our own Constitution. In the absence of precedent, we would feel constrained to create a precedent in harmony with our views. Every litigant is entitled to nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interests of the parties involved in the litigation, whether that interest is revealed by an inspection of the record or developed by evidence *aliunde* the record. The real parties in interest furnish the reason for the judge to recuse himself when it becomes known that they are related to the judge, although they may not be parties *eo nomine*."

In Crook v. Newborg, 124 Ala. 479, 27 So. 432, 82 Am. St. Rep. 190, the court said:

"The purpose of the statute is to secure to litigants a fair and impartial trial by an impartial and unbiased tribunal. Next in importance to the

duty of rendering a righteous judgment is that of doing it in such manner as will beget no suspicion of the fairness or integrity of the judge."

We think the facts of this case bring it clearly within the spirit of the rule announced in Petrey v. Holliday, *supra*, and that the trial judge erred in refusing to vacate the bench. There is nothing in the record which indicates any failure on his part to give to the defendant that fair and impartial trial which he would have received at the hands of any other honest judge, but, as said in Petrey v. Holliday, *supra*:

"The judge is not the only one concerned in the just and correct course of justice. Nor, indeed, are the litigants the only ones to be consulted. The public generally have the right to feel that there is no favoritism in the courthouse; that there all men stand equal before the law; and that there justice will be dispensed to all with an even hand. The fact that the judge may be unconscious of any bias and may be sure that interest or relationship could not dispose him to favor one side or the other, is not enough. The unsuccessful litigant has also the right to know that the decision was the offspring of a fair and impartial mind, and this satisfying assurance he cannot have if there are before his eyes facts or circumstances reasonably sufficient to create the belief that influences outside of the record operated in making the decision."

As the case must be reversed because of the error of the trial judge in refusing to vacate the bench, it is unnecessary to discuss or determine the other grounds for reversal relied on by appellant.

Judgment reversed, with directions to grant appellant a new trial.