## Johnson v. Commonwealth.

June 17, 1947.

Ray C. Lewis, Judge.

J. Milton Luker for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Under an indictment charging him with raping Edna Sizemore, age 18, in August, 1946, Melvin Johnson was found guilty of the crime of detaining her against her will and sentenced to seven years in prison.

Counsel for Johnson vigorously contends the court erred in overruling a motion to vacate the bench and that the verdict is flagrantly against the evidence. Since we have reached the conclusion that the judgment must be reversed on the first ground, we shall confine our consideration of the case principally to that question. We may say at the outset, however, that a very weak case was made against Johnson.

Edna Sizemore, the prosecuting witness, rode in and around London with Johnson and Woodson Brown from about eleven o'clock on the night of the alleged offense until about eight-thirty the next morning. The act of intercourse, which Johnson freely admitted, though he said it was voluntary on Edna's part, took place after daylight. The couple were seen hugging and kissing each other after that time. It is true, however, that Edna said she got in the car with Johnson and Brown when they said they would take her home from a fair and that she asked them to do so on other occasions. She said further that the act of intercourse with Johnson was not voluntary. However, she had many opportunities to leave the car and her conduct certainly refutes the assumption that she was forced to do anything.

The basis for the motion to have the trial judge, the Honorable Ray C. Lewis, vacate the bench is that he is a third cousin of Taylor Sizemore, father of Edna, and therefore a fourth cousin of Edna, the only person who could testify as to the alleged facts set forth in the indictment. The affidavit further sets forth that Johnson's appearance bond of $10,000 was not to be accepted without the special permission and approval of the judge, and further, after Johnson procured several bondsmen, who were fully qualified to sign his bond, the judge required additional sureties.

In the case of Petrey v. Holliday, 178 Ky. 410, 199

S. W. 67, 72, foreign authorities on this question are reviewed at some length, and it was said:

"The judge is not the only one concerned in the just and correct course of justice. Nor, indeed, are the litigants the only ones to be consulted. The public generally have the right to feel that there is no favoritism in the courthouse; that all men stand equal before the law, and that there justice will be dispensed to all with an even hand. The fact that the judge may be unconscious of any bias, and may be sure that interest or relationship could not dispose him to favor one side or the other, is not enough. The unsuccessful litigant has also the right to know that the decision was the offspring of a fair and impartial mind, and this satisfying assurance he cannot have if there are before his eyes facts or circumstances reasonably sufficient to create the belief that influences outside of the record operated in making the decision . See Bradley v. Commonwealth, 218 Ky. 675, 291 S. W. 1047, and also Allen, Commonwealth's Attorney v. Bach, Judge, 233 Ky. 501, 26 S. W. 2d 43.

In the case of Commonwealth, by Cooper, v. Howard, District Judge, 267 Ky. 287, 102 S. W. 2d 18, the circuit judge was the cousin of one of the defendants and a fourth cousin of another. He was also a third cousin of the deceased. In his response to the motion that he vacate the bench he said he had been friendly with all the parties and that he had no interest or feeling which would prevent him from giving both the Commonwealth and the defendants a fair trial. Reference was made to the Petrey Case in granting a writ of prohibition, and in the course of the opinion it was said:

"It is the common law of the Commonwealth of Kentucky that a trial judge who is related to one of the litigants in a recognized degree is disqualified to preside in his case. This is upon the conception of implied bias. There may be no conscious partisanship, and, as a matter of fact, no disposition to favor one party over the other, but the principle is too vital to the administration of pure justice—the ever present aspiration of the law—to be disregarded. Petrey v. Holliday, 178 Ky. 410, 199 S. W. 67; Allen v. Bach, supra. We think the fact of similar relationship to the person of

whose murder the defendants are charged makes no difference. There can be no such thing as a balancing of disqualifications. Beyond that, the family of the deceased is not an adverse party. It is the Commonwealth of Kentucky who is seeking justice at the bar in this case. The courts must prove worthy of the confidence of the people, and that confidence cannot be secured or retained by permitting a judge to sit at the trial of a case where his cousins are involved." In view of the authorities heretofore mentioned, and the facts and circumstances peculiar to the case at bar, we are convinced that the trial judge should have vacated the bench when Johnson moved that he do so.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.