187 So.2d 815 (1966)
Eddle Lee BLACK
v.
STATE of Mississippi.
No. 43928.
Supreme Court of Mississippi.
June 13, 1966.
Parker & Rankin, Tupelo, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice.
The appellant was indicted, tried and convicted in the Circuit Court of the First Judicial District of Chickasaw County, Mississippi, for the crime of false pretense under the "bad check law", (Mississippi Code Annotated section 2153, 1956), and given the maximum sentence of a fine of *816 $500 and imprisonment in the State Penitentiary for a term of three years.
After the return of the indictment, and before the trial, the defendant filed a motion requesting the court to quash the indictment against him, and to quash the venire of petit jurors based upon the ground that Negroes were systematically excluded from the grand jury that returned the indictment, and that Negroes were systematically excluded from the petit jury summoned to try him. The trial judge, after having heard the evidence, overruled the motion and ordered defendant tried.
The defendant filed a motion requesting the trial judge to recuse himself because of his relationship to the prosecuting witness, R.L. Harmon, who had an interest in the outcome of the prosecution. This motion was overruled. There were other motions and objections made by the defendant, but we find no error in the rulings of the court on the other motions.
The defendant urgently contends on appeal that the trial judge committed reversible error in overruling both motions, above set out. After having carefully considered the evidence, we have reached the conclusion that the motions should have been sustained, under the facts in this case.
The defendant called as a witness the Circuit Clerk, the Chancery Clerk and Members of the Board of Supervisors of Chickasaw County, Mississippi, to show systematic exclusion of Negroes from the juries of the county. The testimony shows that in 1960, there were 16,891 persons residing in Chickasaw County, of whom 10,380, or 61.5% were white, and 6,499, or 38.5% were Negroes. The record reveals that at the time of the trial of the appellant there were no Negroes registered to vote in the First Judicial District. Two Negroes were drawn for jury service the year before, and two were drawn at the term of court then in progress. No Negroes had served on juries in the past ten years until the year before the trial. The supervisors testified that they were furnished a list of the qualified electors, and that they used the land rolls of the county to ascertain the names of the resident freeholders of the county from which to select a venire. They testified that they did not know how many Negroes were drawn for jury duty from the list of names on the land rolls of the county, because the land rolls did not reveal the race of the resident freeholders.
The obvious reason Negroes have not served on juries in this county heretofore is that they were not qualified jurors, because they were not qualified electors, and persons who refused to qualify to vote were not summoned for jury duty. The law of Mississippi, for many years, required jurors to be qualified electors. (Miss.Const. 1890 § 264; Miss. Code Ann. § 1762, 1956).
The case of Patton v. State, 201 Miss. 410, 29 So.2d 96 (1947), was appealed to the Supreme Court of the United States, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, 1 A.L.R. 2d 1286 (1947), and the Court said:
"It is to be noted at once that the indisputable fact that no Negro had served on a criminal court grand or petit jury for a period of thirty years created a very strong showing that during that period Negroes were systematically excluded from jury service because of race. When such a showing was made, it became a duty of the State to try to justify such an exclusion as having been brought about for some reason other than racial discrimination." 332 U.S. at 466, 68 S.Ct. at 186.
In the case of Goldsby v. State, 226 Miss. 1, 78 So.2d 762, 84 So.2d 528, 86 So.2d 27, 91 So.2d 750 (1955), (appealed to United States Court of Appeals), United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir.1959), certiorari denied, 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78 (1959), the appellate court, supra, pointed out that long-continued omission of Negroes from jury service established a prima facie case of *817 systematic discrimination, and that the burden of proof was upon the State to refute it.
The Court said:
"We cannot assume that Negroes, the majority class in Carroll County, had enmasse, or in any substantial numbers, voluntarily abstained from registering as electors and, by such action, had rendered themselves ineligible for jury duty. If the registration officials freely and fairly registered qualified Negroes as electors, that fact rested more in the knowledge of the State. The burden was on appellee, as the State's representative, to refute the strong prima facie case developed by the appellant. The only Negroes ever proved registered as electors in Carroll County were two who had died before 1954." 263 F.2d at 78.
* * * * * *
"In our opinion, the appellant proved a strong prima facie case that Negroes were systematically excluded from the grand jury and from the petit jury, and that case was not refuted by the State." 263 F.2d at 79.
After the Court's decision in the Goldsby case, it became apparent that the State criminal courts were then, of course, helpless to proceed against Negroes in counties where they refused to register to vote. The Mississippi Legislature took steps to remedy this situation. The Laws of 1960, Chapter 502, proposed an amendment to Section 264 Mississippi Constitution of 1890. This amendment was ratified by the people of Mississippi and became a part of the Constitution on November 23, 1960. The amendment simply permitted the Legislature to provide for the qualification of grand and petit juries.
Thereafter, the Legislature amended Mississippi Code Annotated section 1762 (1956) by Laws 1962, Chapter 308, so as to make "(E)ither a qualified elector, or a resident freeholder of the county for more than one year * * * a competent juror."
The Legislature amended Mississippi Code Annotated section 1762, supra, by Laws 1964, Chapter 327, so as to permit the circuit judge to enter an order in the counties where it became necessary to summon freeholders or because of the failure of Negroes to register.
Thus, in an effort to obtain qualified Negroes for jury service, without regard as to whether or not they were qualified electors, the Mississippi Legislature extended the duty to serve on juries, not only to electors, but also to persons who are resident freeholders. It at once became apparent that in the counties where Negroes do not register to vote, the persons selected from the list of qualified electors are white people. On the other hand, qualified resident Negro freeholders are now available for jury duty, and may be selected so as not to discriminate or systematically exclude Negroes, or any other ethnic group, from jury service. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 437, 97 L.Ed. 469 (1953).
Mississippi Code Annotated section 1762 (1956), as amended by Laws 1964, Chapter 327, section 3, requires the board of supervisors, at their April meeting each year, to select and make a list of persons to serve as jurors in the circuit court, and as a guide in making the list, they shall use the registration books of voters and the land assessment rolls of the county, and shall select and list all names of qualified persons of "good intelligence", "sound judgment", and "fair character", and shall take them as nearly as they conveniently can, from the several supervisors' districts in proportion to the numbers of qualified persons, etc.
In this case the board of supervisors had the duty of determining that the persons selected for jury duty were persons of "good intelligence", "sound judgment", and "fair character." There is no rule requiring the board of supervisors to select jurors *818 in proportion to their ethnic numbers, percentagewise, in each county. Lewis v. State, 91 Miss. 505, 45 So. 360 (1908); Sims v. State, 221 Ga. 190, 144 S.E.2d 103 (1965).
On the other hand, the objection heretofore raised in the United States Federal Court will not be eradicated by summoning a token number of Negroes, or other ethnic groups, to serve on juries of this State. The boards of supervisors have the unalterable duty to select good citizens for jury duty without regard to race. In the instant case, the State did not sustain the burden of refuting the prima facie case made by appellant, that Negroes had been heretofore systematically excluded from the juries of Chickasaw County, Mississippi, by showing that the board of supervisors had ceased to do so. The State has not sufficiently shown a selection of qualified Negro citizens for jury service from the land rolls of the First Judicial District of Chickasaw County, Mississippi, since this is the only possible source of qualified Negroes in this judicial district. In order to meet this burden, the State must show that the board had abandoned the former practice of systematic exclusion, and that Negroes are now being selected for jury service as are other qualified citizens. Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965); Farrow v. State, 91 Miss. 509, 45 So. 619 (1908); Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); Ethridge, Recent Trends in Criminal Law, and Their Effect upon Mississippi Practice, 37 Miss.L.J. 9 (1965).[1]
The trial court should have quashed the grand and petit juries and jury lists, and should have summoned a common-law jury from the body of the judicial district. See Pearson v. State, 176 Miss. 9, 167 So. 644 (1936); Whitehead v. State, 97 Miss. 537, 52 So. 259 (1910). In Riley v. State, 208 Miss. 336, 44 So.2d 455 (1950), this Court sustained the action of the trial court in ordering a venire when the jury list had been exhausted, and where it was shown that the trial judge orally directed the clerk to select seventy-five jurors from the poll books of the county. The law at that time required all jurors to be qualified electors. The judge in that case directed the method of selecting the list of jurors.
We have carefully reviewed the motion of appellant requesting the trial judge to recuse himself upon the ground of kinship, and have considered the ruling of the judge in which he stated he was a first cousin of the prosecuting witness, R.L. Harmon. We have reached the conclusion that the motion should have been sustained *819 and the trial judge should have recused himself.
Section 165 Article 6, Mississippi Constitution of 1890 provided in part that:
"No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties."
Although it is obviously not necessary, nevertheless, section 165 of the Constitution is implemented by Mississippi Code Annotated section 1651 (1956).
The prosecuting witness in the instant case filed an affidavit against appellant because of a bad check given to him by appellant. We will not discuss the facts, since the case must be tried again, except to point out that the facts border upon a private prosecution. However, we are of the opinion that the facts barely are sufficient to avoid a directed verdict. The prosecuting witness in the case at bar is interested in the outcome of the prosecution, more so than an ordinary, disinterested State witness. A trial judge should avoid sitting in a case where the sole prosecuting witness is a near relative, and who is interested in the outcome of the prosecution. For example: A judge should not sit in a case where defendant is being tried for the rape of a close relative of the judge. This example is clearly inferred from the case of McLendon v. State, 187 Miss. 247, 191 So. 821 (1939). See also 48 C.J.S. Judges § 87, at 1076 (1947).
The Supreme Court of Kentucky, in the case of Johnson v. Commonwealth, 305 Ky. 213, 203 S.W.2d 12 (1947), in a rape case, where the trial judge was a first cousin of the prosecuting witness, said, in quoting from the case of Petrey v. Holliday, 178 Ky. 410, 199 S.W. 67 that:
"The judge is not the only one concerned in the just and correct course of justice. Nor, indeed, are the litigants the only ones to be consulted. The public generally have the right to feel that there is no favoritism in the courthouse; that there all men stand equal before the law, and that there justice will be dispensed to all with an even hand. The fact that the judge may be unconscious of any bias, and may be sure that interest or relationship could not dispose him to favor one side or the other, is not enough. The unsuccessful litigant has also the right to know that the decision was the offspring of a fair and impartial mind, and this satisfying assurance he cannot have if there are before his eyes facts or circumstances reasonably sufficient to create the belief that influences outside of the record operated in making the decision." 305 Ky. at 215, 203 S.W.2d at 12-13.
We agree with the Supreme Court of Kentucky. Our courts should go to great lengths to avoid the appearance of favoritism, and where there is a reasonable doubt in the mind of the trial judge as to whether or not he should recuse himself, he should promptly withdraw from the trial of the case and thereby avoid undue criticism of the courts of this State.
We therefore hold that the court committed reversible error in overruling both motions presented by the defendant in the trial court. This case is therefore reversed, the indictment quashed, and the appellant will be held under bond to await the action of a qualified grand jury summoned from a proper jury list.
Reversed and remanded, and appellant held under bond to await action of a new grand jury.
GILLESPIE, P.J., and JONES, INZER and SMITH, JJ., concur.
NOTES
[1] See Farrow v. State, 91 Miss. 509, 45 So. 619 (1908). The rule as to the burden of proof necessary to show discrimination because of race is set out in Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947). It is there pointed out, however, that: "But purposeful discrimination may not be assumed or merely asserted." 380 U.S. at 205, 85 S.Ct. at 827, 13 L.Ed.2d at 764. See Brownfield v. State of South Carolina, 189 U.S. 426, 23 S.Ct. 513, 47 L.Ed. 882 (1903); Tarrance v. State of Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903); Smith v. State of Mississippi, 162 U.S. 592, 16 S.Ct. 900, 40 L.Ed. 1082 (1896); Bush v. Commonwealth of Kentucky, 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354 (1882). It must be proven. Tarrance v. State of Florida, supra; Martin v. State of Texas, 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497 (1905).

The recent cases show that the aim and purpose of the law is to obtain juries which truly represent a cross-section of the community, but there is no constitutional requirement that such juries represent the proportional strength or exact percentage of the various components of the population. See Swain v. State of Alabama, supra; Fay v. People of State of New York, supra; Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 437, 97 L.Ed. 469 (1953); Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); Billingsley v. Clayton, 359 F.2d 13, decided April 5, 1966 by the 5th Cir.; Scott v. Walker, 358 F.2d 561, decided March 31, 1966 by the 5th Cir.