GILLESPIE, Chief Justice:
This is an appeal by V. J. Stephens and Avery H. McKinley (protesters) from a decree of the Chancery Court of Adams County validating a $2,500,000 bond issue authorized by the Mayor and Board of Aldermen of the City of Natchez (City), for the purposes of constructing, improving or paving streets, sidewalks, driveways, parkways and walkways; for constructing a public parking facility; and for purchasing land therefor. The two principal questions for our decision are: (1) Did the chancellor err in overruling the motion of protesters that he disqualify himself, and (2) did the chancellor err in refusing to admit evidence concerning the validity of the minutes of the Mayor and Board of *487 Aldermen? We hold that the trial court erred in both instances and reverse the case for trial before a disinterested chancellor.
The City adopted a resolution on August 2,. 1971, declaring its intention to issue negotiable bonds in the amount of $2,500,-000 for the aforesaid purposes. The resolution stated that the City would adopt a resolution on August 30, 1971, directing the issuance of the bonds unless on or before said date ten percent of the qualified electors of the City, or 1500 qualified electors, whichever is the lesser, filed a written protest against the issuance of said bonds. On August 30, 1971, a petition protesting the issuance of the bonds was filed containing the names of 1850 individuals. On October 4, 1971, the City purportedly adopted a resolution adjudicating that there were 12,807 qualified electors in the City of Natchez, and that 1059 should be deleted from the protest petition, leaving 791 qualified electors protesting the issuance of the bonds which would be an insufficient number to require an election. On October 4, 1971, the City filed a transcript of the proceedings of the Mayor and Board of Aider-men under the provisions of Mississippi Code 1942 Annotated section 4314 (1956), whereupon the chancellor entered an order that the matter of the validation of the bonds was set for hearing on October 18, 1971.
On October 18, 1971, the protesters filed a motion for the chancellor to recuse himself together with objections to the validation, including the averment that there were no legal minutes of a meeting of the Mayor and Board of Aldermen on October 4, 1971, because such minutes were not signed within the time and manner required by law. Approximately twenty-seven other grounds of objections were averred by the protesters which need not be discussed in this opinion.
I.
Did the chancellor err in refusing to disqualify himself?
The protesters filed a suggestion or motion that Chancellor Curtis L. Collins disqualify himself in order that some other judge could hear the case. The protesters assigned the following as grounds for their motion: (1) That the chancellor was a resident citizen of the City of Natchez and was directly interested in the outcome of this particular bond issue; (2) the chancellor had previously served as City Attorney for the City of Natchez; and (3) that a portion of the chancellor’s property situated in the City of Natchez was directly involved in one of the proposed improvements to be funded by the bond issue involved in this case.
On the hearing of this motion the proof showed that in 1969 Chancellor Collins granted an easement over a triangular tract of land in front of his residence consisting of .23 acres for the proposed Melrose-Montebello Parkway to be constructed from funds derived from the bond issue in question. In exchange for this easement City deeded to Chancellor Collins in fee simple 1.3 acres of land adjacent to the Chancellor’s home. The proposed Melrose-Montebello Parkway will front 800 feet along the. 1.3 acre tract deeded to Chancellor Collins. The protesters offered proof that the construction of the Melrose-Montc-bello Parkway would' increase the value of Chancellor Collins’ property that he acquired from the City. The City offered proof that the construction of the parkway would lessen the value of the property.
In overruling the motion to disqualify himself, the chancellor dictated an opinion in which he said, among other things:
Gentlemen, I’ve heard the testimony here and, of course, it hasn’t taught me anything I didn’t already know. I can say for the benefit of the public, as far as I’m personally concerned, I don’t personally want to open up that road. I would be very much opposed to the Melrose-Montebello Parkway coming along my property as it does. You can call it pecuniary interest if you want to; I *488 don’t personally want it there and my wife doesn’t want it either; of course, that would work against the City’s interest.

After my conference with these lawyers on Wednesday before they filed their motion on Monday several days later, after I had assured them I had no interest and I could be as fair as humanly possible, I must admit that I was somewhat shocked; and I say this because we lawyers are used to trusting each other and taking each other at their word. If Mr. Fitzpatrick or Mr. Riley either one had told me that they could be truthful and fair in anything, I would have accepted their word. Now, had they not asked me, had they come and filed this motion, I wouldn’t have been. The part that I was shocked at was the questioning of the integrity, honesty, sincerity, and truthfulness of this Court and of me after they have practiced law with me for twenty-odd years. I don’t think they’ve ever done it before when I was off the bench, and they’ve never done it before while I was on the bench. They’ve always accepted my word, and I’ve always accepted theirs, and I don’t know what provoked this.
There is a lot of political motivation, revenge and hate in connection with this law suit; and the Court knows probably more than it should. I live in this community, and I know who is behind it. I mean, as a citizen I do, but I don’t take it into my consideration on this case. It sickens me that this City has never gotten together behind a single administration; always there has been a fight. I came here on April Fools’ Day, 1950, and read the local newspaper and a very affluent leader, Mr. Engle, was fighting the May- or and Board of Aldermen, and I think the same thing has happened ever since. These things bother me. Several different Mayors and Boards of Aldermen have proposed this same program only in different ways, and somebody starts trouble, and it gets kicked out. I hate it that we’re a town like this; I wish we were a City like Jackson or Tupelo; they stick together and they get things done.

This Court has been informed that there are people wanting to drag out this thing until the next Mayor’s election. I hope that the attorneys wouldn’t be a party to something like that. If true, I hope that at least the lawyers won’t become a part of this conspiracy. They don’t have to go this far for their clients, The only thing they owe their client is to do the best job they know how.
If this is true, Gentlemen, there can be some serious set backs because I think some people are bordering on pretty serious difficulty with this Court. This Court will not be used as a political arena by anybody and this means the present administration, political hopefuls or anybody else. I hope I never have to exercise my authority against anybody, maybe a fellow citizen, but I’m prepared to do so if it is necessary to protect this Court.
Mississippi Constitution 1890 Article VI, section 165, provides in part as follows:
No judge of any court shall preside on the trial of any' cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties.
Mississippi Code 1942 Annotated section 1651 (1956) is as follows:
The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties.
*489 The record is clear beyond any doubt that Chancellor Collins should have recused himself in this case. He exchanged deeds with the City, one of the parties to this litigation, and funds from the bond issue in question are to be used in the construction of the parkway abutting Chancellor Collins’ property for more than 1,000 feet, including 800 feet on the property he acquired from the City in the exchange of deeds. Without regard to whether the construction of the parkway will increase or lessen the value of Chancellor Collins’ property, he is pecuniarily interested; it is not contended by anyone that his property will be unaffected by the construction of the parkway. In his opinion overruling the motion to disqualify himself, the chancellor stated (1) that he was interested pe-cuniarily; (2) that he knew more than he ought to know about the case; (3) that he was shocked because a motion was made that he disqualify himself and that he considered his integrity questioned by the filing of the motion; (4) that there was a “lot of political motivation, revenge and hate in connection with this lawsuit” and that he knew who was behind it; (5) that it “sickened” him that the City had never gotten behind a single administration, obviously meaning that the fact that the protesters filed a protest sickened him; (6) that he had been informed that people wanted to drag the case out, and he admonished the attorneys in this regard; and (7) that some people were bordering on pretty serious difficulty with the court, and he threatened to exercise his authority against anybody, maybe a fellow citizen — clearly constituting a threat to someone.
This Court stated in Yazoo & Mississippi Valley R. R. Co. v. Kirk, 102 Miss. 41, 58 So. 710 (1912), that every litigant is entitled to nothing less than the cold neutrality of an impartial judge. In Black v. State, 187 So.2d 815 (Miss.1966), this Court cited with approval the case of Johnson v. Commonwealth, 305 Ky. 213, 203 S.W.2d 12 (1947), which contained the following quotation from another Kentucky case, to-wit:
The judge is not the only one concerned in the just and correct course of justice. Nor, indeed, are the litigants the only ones to be consulted. The public generally have [sic] the right to feel that there is no favoritism in the courthouse; that there all men stand equal before the law, and that there justice will be dispensed to all with an even hand. The fact that the judge may be unconscious of any bias, and may be sure that interest or relationship could not dispose him to favor one side or the other, is not enough. The unsuccessful litigant has also the right to know that the decision was the offspring of a fair and impartial mind, and this satisfying assurance he cannot have if there are before his eyes facts or circumstances reasonably sufficient to create the belief that influences outside of the record operated in making the decision. (305 Ky. at 215, 203 S.W.2d at 12-13).
II.
Did the chancellor err in declining to admit any testimony impeaching the validity of the minutes of the Mayor and Board of Aldermen?
Among the resolutions which the protesters contend are invalid is the one purportedly adopted by the City on October 4, 1971, adjudicating that 1059 names should be deleted from the protest petitions, and adjudicating that less than ten percent of the qualified electors of the City of Natchez protested the election in writing.
The City offered in evidence as Exhibit A, a certificate of Shelly D. Dearing, Deputy City Clerk, dated November 12, 1971, certifying that the attached minutes of the Mayor and Board of Aldermen were a true and correct copy as entered in the minute book of the records of the City of Natchez. Included in these minutes was the alleged resolution of October 4, 1971. Thereafter, protesters offered a certificate of Martha B. Brown, the City Clerk, dated *490 October 18, 1971, certifying as true and correct a copy of the minutes of various meetings of the Mayor and Board of Aldermen from September 13, 1971, through October 4, 1971, recorded in Minute Book 45, pages 654 — 716, identified as Exhibit XY. The protesters also offered the testimony of Deputy Chancery Clerk Burns that he photostated the original minute book at the time of the certificate of Martha B. Brown, City Clerk. The purported photostatic copy of the minutes reflected the following, to-wit: (1) the minutes of the meeting on September 13, 1971, had not been signed by the Mayor, but had been signed only by Martha B. Brown, City Clerk; (2) neither the Mayor nor the City Clerk signed the minutes of the recessed meeting held on September 23, 1971, which was recessed over to September 27,1971; (3) on September 27, 1971, the meeting was recessed until September 30, 1971, with no signatures thereon; (4) the recessed meeting of September 30 showed no signatures; this meeting was recessed to October 4, 1971; and (5) the minutes of the meeting on October 4, 1971, consisting of only one page, contained no signatures thereon, whereas the copy in the City’s Exhibit “A” of the October 4 minutes contained the lengthy resolutions vital to the bond issue in question. The court declined to allow the certified copy of the minutes of Martha B. Brown, City Clerk, dated October 18, 1971, to be admitted in evidence, although it contradicts the certificate of the Deputy Clerk dated November 12, 1971, in many respects.
This Court held in Ballard v. Smith, 234 Miss. 531, 107 So.2d 580 (1958), that the 1950 amendments to the municipal laws of the state manifest a legislative intent that the city clerk shall keep municipal minutes which record the proceedings as to all orders of the governing authorities of the municipality, and that the minutes shall be read, verified, and subscribed by the mayor and clerk. The Court also held that a failure to comply with these requirements invalidates the purported action of the municipality.
Mississippi Code 1942 Annotated section 3374-72 (Supp.1971) provides in part that:
The minutes of every municipality must be signed by the mayor or a majority of all the members of the governing body of the municipality within ten (10) days of the meeting thereof, and upon such signing said minutes shall have the legal effect of being valid from and after the date of the meeting. All minutes signed after ten (10) days from the date of the meeting shall be valid from and after the date of such signing.
Regardless of whether the minutes of October 4, 1971, were written after the October 18, 1971, certificate to Exhibit XY, certified by Martha B. Brown, City Clerk, as contended by protesters, the purported minutes in Exhibit XY show that as far back as September 23 the minutes recessing until later dates had not been signed. Under section 3374 — 72, all minutes signed after ten days from the date of the meeting shall be valid from and after the date of such signing. Therefore, if any of the minutes of the September 13, September 23, September 27, or September 30, meetings (the latter recessing until October 4, 1971) were signed after October 18, the minutes containing the recessing orders did not become valid until such time as they were signed because more than ten days had elapsed. It would follow that there could not have been a valid meeting on October 4, 1971. Therefore, we hold the chancellor erred in not admitting Exhibit XY in evidence, and in refusing to admit the testimony of Deputy Chancery Clerk Burns that he photostated the minute book in connection with the preparation of Exhibit XY. Exhibit XY and Deputy Chancery Clerk Burns’ testimony ought to have been considered by the chancellor, together with the original minute book and all the other evidence, in determining if the minutes were valid.
For the reasons stated, this case is reversed and remanded for trial by a disin *491 terested chancellor as provided by law where a chancellor is disqualified.
Reversed and remanded.
PATTERSON, SMITH, ROBERTSON and SUGG, JJ., concur.